1  D. Samuel Coffman (AZ 011428)
   scoffman@dickinsonwright.com
2  Bradley A. Burns (AZ 030508)
   bburns@dickinsonwright.com
3  Amanda E. Newman (AZ 032462)
   anewman@dickinsonwright.com
4  Mitchell P. Reber (AZ 036209)
   mreber@dickinsonwright.com
5  **DICKINSON WRIGHT PLLC**
   1850 North Central Avenue, Suite 1400
6  Phoenix, Arizona 85004
   Telephone: (602) 285-5000
7  Facsimile: (844) 670-6009
   Firm Email: courtdocs@dickinsonwright.com
8  *Attorneys for Plaintiff Navajo Health Foundation –*

   *Sage Memorial Hospital, Inc.*
9

10              **IN THE UNITED STATES DISTRICT COURT**

11                      **DISTRICT OF ARIZONA**

12

13 | Navajo Health Foundation – Sage Memorial Hospital, Inc. (doing business as "Sage Memorial Hospital"), | **Case No. 3:23-cv-08072-DJH** |

14                    Plaintiff,

15        v.                                          **PLAINTIFF'S FOURTH**
                                                      **AMENDED COMPLAINT**
16  Razaghi Development Company, LLC
    (doing business as "Razaghi Healthcare");
17  Ahmad R. Razaghi; Tausif Hasan; Does 1-
    10,
18
                    Defendants.
19                                                    (Hon. Diane J. Humetewa)

20  And related counterclaims and third-party
    claims.
21

22  / / /

23  / / /

24

25  / / /

26  / / /

                              1

Navajo Health Foundation - Sage Memorial Hospital, Inc. alleges as follows:

**JURISDICTION**

1.     This is an action arising from violations of the Federal Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. 1961, *et seq*. ("RICO"), as well as other related claims for relief such as common law fraud, conversion, breach of fiduciary duty, and unjust enrichment, which are based on the same operative facts as the RICO claims.

2.     The Court has jurisdiction over this action for the following reasons:

    a.     The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) because this action arises under RICO.

    b.     The Court has supplemental jurisdiction under 28 U.S.C. § 1367 because the state common and statutory law claims are related to the RICO claims and form part of the same case or controversy.

3.     Venue is proper in this district for the following reasons:

    a.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events, acts or omissions giving rise to this lawsuit occurred in this district.

    b.     Venue is proper in this district under 18 U.S.C. § 1965 because Sage Memorial asserts a RICO claim against Defendants and Defendants have an agent, transacted their affairs, or reside in this district.

**PARTIES**

**The Plaintiff**

4.     Plaintiff Navajo Health Foundation - Sage Memorial Hospital, Inc. ("Sage Memorial") is an Arizona non-profit corporation headquartered in Ganado, Arizona. Sage Memorial administers and operates a 25-bed hospital serving the Navajo Indian population.  The hospital is located within the territorial boundaries of the Navajo Nation and is the only hospital within a 40-mile radius.

1

2

**The Defendants**

5.       Defendant Razaghi Development Company, LLC is currently an Arizona limited liability company.  Development Company, LLC was originally formed as a Nevada limited liability company on or about October 17, 2007.  On May 8, 2019, Razaghi Development Company, LLC redomesticated as an Arizona limited liability company and notified the Arizona Secretary of State that the address for its known place of business was located in Scottsdale, Arizona.  During all time periods relevant to this Fourth Amended Complaint ("FAC), Razaghi Development Company, LLC transacted business under the fictitious name "Razaghi Healthcare" and is referred to herein for ease of reference as "Razaghi Healthcare NV."  From March 13, 2013 through August 31, 2018, Razaghi Healthcare NV acted as the "Contract CEO" for Sage Memorial.

6.       Defendant Ahmad R. Razaghi ("Razaghi"), upon information and belief, has been, at various time relevant to the allegations of this FAC, a resident of the State of Nevada and subsequently a resident of the State of Arizona.  Razaghi is, and at all times relevant to the allegations in this FAC was, the managing member of Razaghi Healthcare NV.  Razaghi is being sued in both his individual capacity and his capacity as the managing member of Razaghi Healthcare NV.  Throughout the time Razaghi Healthcare NV served as Contract CEO to Sage Memorial, Razaghi Healthcare NV dedicated Razaghi as the individual responsible for providing the CEO services.

7.       Defendant Tausif Hasan ("Hasan") is, and at all times relevant to the allegations contained in this FAC was, a resident of the State of Arizona.  Hasan was employed by Razaghi Healthcare NV from September 2015 to September 2017 and from December 2017 to August 31, 2018.  During periods of time relevant to the allegations contained in this FAC, Hasan was the individual Razaghi assigned to provide "Contract Chief Financial Officer" services to Sage Memorial.  Hasan is being sued herein in his individual capacity and as an employee of Razaghi Healthcare NV.

8.       Plaintiff is informed and believes, and thereupon alleges, that each of the Defendants designated as Does 1 through 10 inclusive, are responsible in some manner

3

for the events and happenings herein referred to and negligently and/or intentionally caused injuries and damages to Plaintiff.  Plaintiff further alleges that it cannot currently ascertain the identity of each of the Doe Defendants and Plaintiff will therefore seek leave of Court to amend this Complaint to insert the true names and capacities of Doe Defendants when they have been ascertained, together with appropriate charging allegations and to join such Defendants in this action.

9.      Plaintiff is informed and believes, and thereupon allege, that each of the Defendants designated as Roes A through Z, inclusive, is responsible in some manner for the events and happenings herein referred to and negligently and/or intentionally caused injuries and damages to Plaintiff.  Plaintiff is further informed and believes that each of the Roes is either a corporation, related subsidiary, parent entity, group, partnership, holding company, owner, predecessor entity, successor entity, affiliate, joint venture, related association, insurer or business entity, the true names of which are currently unknown to Plaintiff at this time.  Additionally, Plaintiff alleges that it cannot currently ascertain the identity of each of the Roe Defendants and Plaintiff will therefore seek leave of Court to amend this Complaint to insert the true names and capacities of Roe Defendants when they have been ascertained, together with appropriate charging allegations and to join such Defendants in this action.

**The Non-Party Participants in the Enterprise and Racketeering Activity**

10.      Tadd Greenfield ("Greenfield"), during time periods relevant to this FAC, served as the contract CEO of Sage Memorial.  Greenfield was an employee of Razaghi Healthcare NV or an entity controlled by Razaghi.  He reported to Razaghi and was installed for a period of time by Razaghi as the CEO of Sage Memorial.

11.      Stenson Wauneka ("Wauneka"), during time periods relevant to this FAC, served as the Chairman of the Sage Board.

12.      Abigail Paul ("Paul"), during time periods relevant to this FAC, was employed by Razaghi Healthcare NV as a "Project Manager."  Paul's duties as a project

manager with Razaghi Healthcare NV included performing administrative oversight at Sage Memorial and reporting information concerning Sage Memorial to Razaghi.

13. Cheryl Bailey ("Bailey"), during time periods relevant to this FAC, was employed by Razaghi Healthcare NV as a Senior Vice-President ("VP"). Bailey's duties as a Senior VP with Razaghi Healthcare NV included performing administrative oversight at Sage Memorial and reporting information to Razaghi.

14. Stephen Hoffman, Esq. ("Hoffman") is a licensed member of the State Bar of Arizona. During time periods relevant to this Complaint, Hoffman provided legal services to both Sage Memorial and to Razaghi Healthcare NV. Among other representations, Hoffman was selected and retained by Razaghi and Razaghi Healthcare NV to provide legal advice to the Sage Board in connection with the Second Amendment to the CEO Services Contract and other matters. Even though Hoffman was to provide legal services to the Sage Board, he reported to, and took directions from, Razaghi. More particularly, to further the interests of Razaghi and Razaghi Healthcare NV, rather than to protect the interests of Sage Memorial, Hoffman recommended that the Sage Board approve the Second Amendment to the CEO Services Contract under which Razaghi Healthcare NV would manage Sage Memorial. The amendment contained provisions that had not been discussed with, or disclosed to, the Sage Board before it formally approved the amendments and that the Sage Board would have rejected had they been disclosed. Although selected by Razaghi, Hoffman owed legal and fiduciary duties to Plaintiff and the Sage Board and had a duty to act in Plaintiff's best interests.

15. Christopher S. Stachowiak, Esq. ("Stachowiak") is a licensed member of the State Bar of Arizona. During time periods relevant to this Complaint, he represented Razaghi Healthcare NV as legal counsel. By letter dated September 1, 2018, and presumably mailed that same day, Stachowiak, among other things, questioned whether the Sage Board had the authority to hire counsel other than Stephen Hoffman who was selected by Razaghi to represent Sage Memorial.

# FACTUAL ALLEGATIONS

**Sage Memorial**

16.    Sage Memorial operates a 25-bed hospital that serves a community of approximately 25,000 Navajo people in a remote, high desert area in Ganado, Arizona within the territorial boundaries of the Navajo Nation near the Arizona-New Mexico border.

17.    Sage Memorial serves a largely indigent population (approximately 43% of the population on the Navajo reservation lives below the poverty line, which is more than double the percentage for the general population of the State of Arizona). Sage Memorial provides the Navajo Nation and the broader Ganado community with important healthcare services such as emergency care, 24-hour urgent care, inpatient hospital services, outpatient clinic, behavioral health, physical therapy dentistry, and community health services.

18.    Sage Memorial has been providing medical services to the community since 1901. Sage Memorial is currently the only medical hospital within a 40-mile radius.

19.    Sage Memorial is also a designated "tribal organization" with the meaning of the 1975 Indian Self-Determination and Education Assistance Act, Pub. L. 93-638, and the regulations promulgated thereunder, 25 C.F.R., part 900. The Navajo Nation designated Sage Memorial a tribal organization for the first time in 2002.

20.    As a P.L. 638 tribal organization, Sage Memorial is entitled to contract directly with Indian Health Services ("IHS"), an agency of the United States Department of Health and Human Services and to receive the federal funds necessary to enable it to develop its own healthcare program that is unique to the needs of the Navajo tribal members in the eight other Navajo Nation chapter communities surrounding Sage Memorial.

21.    IHS is Sage Memorial's primary source of funding for its operational and medical services needs. Historically, more than fifty percent of its revenues have come from IHS ("IHS Revenue").

22.    In addition to IHS funding, Sage Memorial also generates revenue by providing medical services to patients covered by Medicare and Medicaid ("collectively, Medicare Revenue"). Historically, approximately forty percent of its revenue has come from Medicare Revenue.

23.    Sage Memorial has historically generated an additional ten percent of its revenue from private insurance (collectively, "Non-Government Revenue").

24.    Federal funds have, therefore, historically provided approximately ninety percent of the revenue Sage Memorial requires to operate its healthcare facility.

25.    By early 2007, Board of Directors of Sage Memorial decided that its aging hospital building, equipment, and services needed to be upgraded to better meet the needs of its community and had begun exploring ways to accomplish those goals.

**The Blue Mountain Hospital Project**

26.    Like the Board of Directors for Sage Memorial, the Utah Navajo Health System in Blanding, Utah had been trying for a number of years to develop, build, and operate a hospital to serve their remote, rural community in the Four Corners area where the Utah, Arizona, Colorado, and New Mexico borders meet.

27.    In October 2006, the Utah Navajo Health System broke ground on the Blue Mountain Hospital, which upon completion would be an eleven-bed hospital facility with surgical services, inpatient hospital services, and other medical amenities needed by the community.

28.    In connection with the groundbreaking, Manuel Morgan, who was at the time Chairman of the Utah Navajo Health System, announced that through their experience with the Blue Mountain Hospital project they had developed "a template for us to bring quality healthcare to the residents of other underserved rural communities." Press releases credited Razaghi Development with providing "the professional team and technical expertise to develop and implement the strategic plan for this project."

29.    In January 2007, Manuel Morgan announced that the Utah Navajo Hospital System had secured more than $14 million in debt financing to help construct the hospital.

In making the announcement, Manuel Morgan again claimed that the process they had developed would "serve as the template for similar communities that seek to elevate or update their healthcare infrastructure." Razaghi, who had no prior healthcare-related experience, and had been appointed Chairman and President of the Blue Mountain Hospital to develop the hospital construction project, added that the Blue Mountain Hospital Project "required the coordinated efforts and resources from several public and private entities, all of which played a critical role, to secure the necessary capital to build this facility."

30.     Both Razaghi and Morgan promoted their ability to duplicate their "success" at Blue Mountain Hospital at other rural communities like the remote community of Sage Memorial located in Ganado, Arizona.

**Razaghi Bids for the Sage Memorial Hospital Project**

31.     In early 2007, Razaghi planned to apply the template and the expertise gained from the Blue Mountain Hospital project to "other underserved rural communities." Sage Memorial Hospital was his first target of opportunity.

32.     On February 7, 2007, Razaghi and Morgan presented the Sage Memorial Board with a proposal to use their "template" and the expertise they claimed to have developed during the Blue Mountain Hospital project to develop, finance, and build a new hospital for Sage Memorial ("Hospital Development Services").

33.     Razaghi and Morgan told the Sage Board they would provide the Hospital Development Services through Manuel Morgan and Associates ("MMA"), which was the company through which Razaghi and Morgan claimed to have worked on the Blue Mountain Hospital project when they developed their template and claimed to have gained their expertise.

34.     Razaghi and Morgan emphasized to the Sage Board that MMA was "a Navajo owned firm." They emphasized that point because the Navajo Nation Business Preference Act promotes the "economic self-sufficiency of the Navajo Nation by granting first opportunity and/or preference in contracting to Navajo and/or Indian owned and

operated businesses." 5 N.N.C. § 201(C)(1).  To qualify as Navajo owned, at least fifty-one percent of the business must have been owned by a member of the Navajo Nation.

35.    Razaghi and Morgan were able to claim that MMA qualified as a Navajo-owned business because Morgan was a member of the Navajo Nation and owned fifty-one percent of the company according to the company's governing documents.

36.    The other forty-nine percent of MMA was owned by Attentus, LLC ("Attentus"), a limited liability company owned by Razaghi and his brother Koroth Razaghi ("Kory").

37.    Morgan was critical to Razaghi's plan for obtaining the contract to build the new Sage Memorial Hospital for other reasons.  Morgan was well-known and highly respected businessman in the Navajo Nation.  He was a county commissioner for San Juan County, Utah, where Blanding, Utah is located, and was the Chairman of the Utah Navajo Medical System, which developed and owned the Blue Mountain Hospital project.  He also had knowledge and experience with P.L. 638 contracting between IHS and tribal healthcare facilities like Sage Memorial.

38.    Razaghi, on the other hand, was unknown, had no experience in hospital administration, and had little to no real-world business experience at all.  Prior to Sage Memorial, Razaghi was a construction company site project manager.  Even his position as President and Chairman of the Blue Mountain Hospital was related to the real estate development phase of the project.  Once construction was completed, and the hospital was preparing to open, someone else was appointed to administer the actual hospital functions and activities.

39.    Unbeknownst to the Sage Board, while Morgan owned fifty-one percent of MMA (thereby allowing MMA to represent that it was Navajo owned), Morgan only received one-third of the profits.  The Razaghi brothers, through Attentus (which owned only forty-nine percent of MMA) received two-thirds of the profits.

40.    Aware that Sage Memorial desperately needed to build a new hospital and that it was eligible for P.L. 638 funding from IHS, Razaghi prepared for his pitch to the

9

Sage Board by reviewing Sage Memorial's audited financial statements for fiscal years 2002 through 2005, a site feasibility study, and other relevant records. Razaghi and Morgan represented to the Sage Board that they had the experience, expertise, and ability to obtain financing for the new hospital by 2010.

41. As compensation for obtaining financing for the new hospital by 2010, Razaghi and Morgan asked Sage Memorial to pay them a fee equal to ten percent of the total cost of the project. In addition, Razaghi and Morgan asked Sage Memorial to pay them a pre-financing development fee in yearly installments of between $650,000 and $900,000 for the years 2007 through the close of financing in 2010. They also asked Sage Memorial to reimburse project-related expenses.

42. On February 7, 2007, Sage Memorial signed a contract retaining MMA to develop, finance, and build a hospital in Ganado, Arizona using the template and experience they developed on the Blue Mountain Hospital project in Blanding Utah. ("MMA Agreement"). In making the decision to retain MMA, the Sage Board relied on Razaghi and Morgan's representations about their template, their expertise, their promises of completing financing by 2010, and their claims of success on the Blue Mountain Hospital project.

43. As part of their agreement, the Sage Board gave MMA the full authority to act as the hospital's agent to negotiate, prepare, execute, and deliver any documents and other agreements "in connection with development, financing, and construction of a new Hospital."

**Razaghi Takes Over Control of Sage Memorial.**

44. On March 13, 2007, Sage Memorial amended the MMA Agreement. ("First MMA Addendum").

45. Only one month after representing to the Sage Board that they could, and would, obtain financing for the new hospital by 2010 -- and only one month after being retained based on that representation -- Razaghi informed the Sage Board that the

hospital's financial performance was so poor that, in their expert opinion, they could not obtain the promised financing in its then current financial condition.

46.     Razaghi represented to the Sage Board that MMA could solve the hospital's financial problems by hiring MMA and giving it full control to manage Sage Memorial's day-to-day hospital operations.  Razaghi represented to the Sage Board that he had the experience and expertise to develop and implement a turnaround plan that would strengthen Sage Memorial's financial condition thereby enabling it to obtain financing for the new hospital.  Importantly, Razaghi told the Sage Board that if it hired MMA to manage the hospital, MMA would be able to turn the financial condition around and also obtain the promised financing for the new hospital by the original 2010 target.

47.     Unbeknownst to the Sage Board, Razaghi's representations were false.  In reality, Razaghi had no experience managing a healthcare facility and had never developed or implemented a turnaround plan for any healthcare facility.

48.     In the First MMA Addendum, the Sage Board delegated to MMA its authority to "make all decisions relating to corporate and operational activities," including the hiring of third-party entities (some of which turned out to be entities owned by or affiliated with Razaghi or Attentus, LLC), all of the hospital's administrative, accounting, and personnel responsibilities.  The Sage Board effectively endowed Razaghi, through his role with MMA, with complete control over Sage Memorial.  The Sage Board's primary purpose for entering into the First MMA Addendum was to improve Sage Memorial's financial condition so they could obtain financing to build the new hospital.

49.     The Sage Board relied on Razaghi's representations when they executed the First MMA Addendum and retained MMA to manage Sage Memorial.

50.     As compensation for MMA's management services, the Sage Board agreed to pay MMA an amount not to exceed the annual development fee set forth in the February 7, 2007 contract.  As a result, under the terms of the First MMA Addendum, Sage Memorial was to pay (i) MMA $650,000 to $900,000 per year from 2007 to the promised closing of financing in 2010 to develop a plan for building a new hospital, plus (ii) an

additional $650,000 to $900,000 per year until early 2010 to manage the operations of Sage Memorial.  The objective of the First MMA Addendum was for MMA to turn Sage Memorial's financial condition around so it could obtain the financing Razaghi represented he would obtain for the fee agreed to in the February 7, 2007 contract.

51.    The First MMA Addendum gave Razaghi, through MMA, control over the entire Sage Memorial hospital operations, including all aspects of the hospital's financial operations.

52.    The First MMA Addendum also gave MMA the right to hire a number of people to perform work at Sage Memorial and seek reimbursement from Sage Memorial for their compensation.  MMA agreed to bill Sage Memorial for the additional personnel without markup and at rates that were consistent with Sage Memorial's budgets and allocations.  MMA invoiced Sage Memorial for any employees it hired and charged Sage Memorial a markup over and above the employees' actual cost.

53.    Under the terms of MMA's various business relationships, Razaghi was required to split the revenue generated by the First MMA Addendum with Morgan and with Kory.

54.    Even though the February 7, 2007 Contract with Sage Memorial represented that Morgan would be part of the "development team" and the First MMA Addendum continued the appearance that Manuel Morgan was a primary team member, Morgan's involvement was almost non-existent after Razaghi had used him to obtain the contracts for the Sage Memorial Hospital Project.

55.    Despite his representations that he had the experience and expertise necessary to run Sage Memorial and turn its financial condition around, Razaghi had never managed or administered an operational hospital or any other significant business.

56.    Under the First MMA Addendum, Razaghi split all of the revenue being received from Sage Memorial with Morgan and Kory.

**The Attentus Agreements**

57.    On December 3, 2007, MMA used its management role and authority to persuade the Sage Board to approve a contract with Attentus, LLC, the limited liability company owned by Razaghi and Kory ("Attentus Agreement") and the forty-nine percent owner of MMA that also receives two-thirds of profits.  The Attentus Agreement authorized an open scope of services that would be defined by separate Statements of Assignment.

58.    On December 3, 2007, MMA presented to the Sage Board a Statement of Assignment authorizing Attentus to prepare a Strategic Development Financial Plan and Architectural Application utilizing the same documents, and performing the same scope of work, for which the Sage Board had retained MMA and for which it had agreed to pay MMA $650,000 to $900,000 per year for three years.

59.    On December 18, 2007, MMA presented to the Sage Board a Statement of Assignment authorizing Sage Memorial to release to Attentus the sum of $700,000 from Sage Memorial's short-term certificate of deposit.  The Statement of Assignment represented the funds would be used to install a fire sprinkler system at Sage Memorial.  Attentus had contracted with Firetrol, a company specializing in fire sprinkler installations.  Unbeknownst to the Sage Board, the price for the fire sprinkler system installation was approximately $15,000.  The remaining $685,000 was retained by Attentus.

60.    On January 29, 2008, MMA presented to the Sage Board another Statement of Assignment authorizing Attentus to provide physicians to work at Sage Memorial as independent contractors, but invoiced by Attentus.  Attentus charged Sage Memorial a marked up over and above the physician's rate.

61.    In FY 2007, Sage Memorial paid Morgan & Associates $1,196,745.

**Sage Memorial's P.L. 638 Contract**

62.    In June 2008, Sage Memorial entered into a contract with IHS for P.L. 638 funding.  The funding agreement significantly increased Sage Memorial's revenues.  As

a result of the IHS contract funding, Sage Memorial's revenues increased from $10,175,265 in FY 2007 to $10,720,130 in FY 2008 to $13,072,579 in FY 2009.

**The March 2009 Agreement**

63.  In March 2009, Sage Memorial and MMA amended their agreement for the second time.  ("Second MMA Addendum").

64.  It became essential for Razaghi and MMA to modify the MMA Agreement and the First MMA Addendum because Razaghi's plan had been to increase revenue for Sage Memorial through P.L. 638 funding, not obtain financing to build a new hospital.

65.  With the IHS funding contract and a steady stream of stable revenue in place, Razaghi and MMA discontinued their efforts to obtain financing for the new hospital by 2010.  Instead, Razaghi worked to convince the Sage Board that a new hospital building was no longer necessary.  Meanwhile, Razaghi worked to develop opportunities that would justify companies affiliated with him, MMA, or Attentus to invoice Sage Memorial.  Despite their representations in March 2007, they had not turned around Sage Memorial's finances to enable the Sage Board to move forward with their desire to develop and build a new hospital.

66.  To induce the Sage Board to enter into the Second MMA Addendum, Razaghi and Morgan told the Sage Board that they expected Sage Memorial's financial condition to improve enough within several months to enable them to start development activities on the new hospital.  Based on those representations, the Sage Board agreed to extend the date for obtaining financing for the new hospital from 2010 to 2013.

67.  The Sage Board entered into a Second MMA Addendum on March 1, 2009, which expanded Razaghi's role at Sage Memorial to formally designate him as Sage Memorial's CEO.  Under its terms, Razaghi agreed to personally undertake all responsibilities for MMA's obligation to provide CEO services to Sage Memorial. Razaghi assumed the responsibility for Sage Memorial and agreed to devote his time and attention to fulfilling that role because his involvement with the Blue Mountain Hospital Project was winding down and would conclude by June 30, 2009.

14

68.     The Second MMA Addendum also modified MMA's compensation in three material ways.

a.      The Second MMA Addendum extended the $650,000 to $900,000 per year Hospital Development Fee in the MMA Agreement for three additional years through 2013.  The Hospital Development Fee had been paid to MMA even though MMA had not done any meaningful work relating to the developing or financing the hospital from February 2007 through the date of the Second MMA Addendum.

b.      The Second MMA Addendum increased the Management Fee from $650,000 to $900,000 per year to $900,000 per year plus an additional five percent annual increase.  The Management Fee was also extended through September 30, 2013.

c.      In addition to the $900,000 annual Management Fee, the Second MMA Addendum also obligated Sage Memorial to pay Razaghi separately (through MMA) an additional $180,000 per year for his work as the CEO plus a $25,000 signing bonus.  The Second MMA Addendum obligated Sage Memorial to pay the additional $180,000 per year for CEO work even though Sage Memorial was already paying MMA $900,000 per year for the same work.

69.     In FY 2009, Sage Memorial paid Morgan & Associates $2,728,178

70.     In FY 2009, Sage Memorial paid Razaghi $221,057 for CEO services.

71.     In FY 2009, Sage Memorial paid Attentus Providers Group $1,794,833 for the physicians it referred to Sage Memorial.

72.     Under the terms of the Second MMA Addendum, Razaghi continued to split the Development Fees and Management Fees with Morgan and Kory.  The only fee Razaghi did not share with them was the new $180,000 annual CEO fee.

**Razaghi Devises a Master Plan.**

73.     After his involvement at Blue Mountain terminated in June 2009, Razaghi shifted his focus, time, and attention to Sage Memorial.

74.     By October 2010, Razaghi had had more than two and a half years' experience with Sage Memorial.  He was also in full control of every aspect of Sage Memorial's operations, including its finances.

75.     As a result of his position at Sage Memorial, Razaghi knew how much revenue Sage Memorial could anticipate receiving each year from IHS Revenue, how much it could anticipate receiving from Medicare Revenue, and how much it could anticipate receiving each year from Non-Government Revenue.  He also knew what Sage Memorial's expenses were anticipated to be each year and endeavored to keep Sage Memorial's expenses for healthcare services, and the supplies needed to provide to services, low.    In addition, Razaghi had complete visibility into Sage Memorial's anticipated future financial performance.  As CEO, he had the complete control over Sage Memorial.  He had almost unfettered authority to make its decisions and direct its activities.

76.     By October 2010, Razaghi decided to do, by himself and for his own benefit, what Morgan had suggested they could do together in October 2006: expand the business idea he was using at Sage Memorial to other communities in the Navajo Nation that wanted to develop or upgrade their medical services facilities.

77.     To achieve his master plan, Razaghi decided to (a) cut Morgan and Kory out of the Sage Memorial revenue stream so that he no longer had to share it, or any future revenue streams, with them; (b) enrich himself by creating and taking increasingly greater revenue from Sage Memorial for himself alone; and (c) expand his business from Sage Memorial to other medical facilities serving communities in the Navajo Nation to generate additional revenue streams.

78.     Razaghi intended to use Sage Memorial's money and resources to accomplish each part of his plan.

**Razaghi Removes Kory and Morgan**

79.     In October 2010, Razaghi notified Morgan and Kory that he did not intend to continue the current business arrangements and intended to dissolve MMA, Attentus,

16

and another company known as Attentus Provider Group ("APG"), which invoiced Sage Memorial for physician services.  Razaghi also began withholding Kory's share of the payments received by MMA, Attentus and APG from Sage Memorial.

80.    In April 2011, Kory sued Razaghi in Nevada state court alleging that Razaghi was wrongfully withholding past payments owed to him and attempting to divert future payments that would be owed to him under existing agreements between Sage Memorial and MMA and APG.  ("Kory State Court Litigation").

81.    The Kory State Court Litigation was a personal business dispute among the partners in MMA, Attentus, and APG concerning the distribution of revenue received from Sage Memorial among the partners of payments MMA, Attentus, APG.  It did not involve Sage Memorial's business or its operations.

82.    Even though the Kory State Court Litigation did not involve Sage Memorial and even though Sage Memorial was not a party to the litigation, Razaghi used his position as Sage Memorial's CEO to cause Sage Memorial to pay his attorneys' fees in the Kory State Court Litigation.

83.    Between April 2011, when Kory filed the Kory State Court Litigation, and January 2013, when Razaghi and Kory settled, Sage Memorial paid Razaghi's attorneys the total sum of $499,833.

84.    In addition to paying the attorney's fees, Razaghi's settlement agreement with Kory obligated him to pay Kory the sum of $332,716.  Razaghi used his position as Sage Memorial's CEO to cause the hospital to pay the settlement.  After Sage Memorial had paid for Razaghi's settlement with Kory, an insurance company representing Razaghi reimbursed him for $231,961 of the settlement.  Razaghi transferred the insurance proceeds to Sage Memorial as a partial reimbursement for the Sage Memorial funds he had used to litigate against Kory and settle Kory's claims.

85.    Razaghi also reached an agreement with Morgan.  Under the terms of their agreement, Morgan agreed to cease any involvement in business dealings with Sage Memorial.

86.    By January 2013, Razaghi had, therefore, removed both Morgan and Kory. He alone controlled Sage Memorial and the associated revenue streams he had created.

**Razaghi Enriches Himself.**

87.    Almost immediately after excluding Morgan and Kory from any further involvement with Sage Memorial in October 2011, Razaghi used his position and his complete control over Sage Memorial to substantially increase the amount of money he was taking from Sage Memorial.  Among other things:

    a.    Razaghi continued to pay MMA the full amount owing to it under the MMA Contract and the First MMA Addendum for almost an additional two years, through September 30, 2013.  Pursuant to his agreements with Morgan and Kory, Razaghi knew he would receive more than half of all amounts Sage Memorial paid to MMA under the MMA Agreement and the First MMA Addendum.  Razaghi caused Sage Memorial to continue paying MMA even though he had no intention of building the new hospital and even though he had not made any meaningful effort to secure financing to develop the new hospital.

    b.    The CEO Services Contract.  In November 2010, Razaghi persuaded the Sage Board to approve a new management contract to replace the $180,000 CEO agreement in the Second MMA Addendum ("CEO Services Contract"). Instead of MMA, the CEO Services Contract was entered into with Razaghi Healthcare, LLC, a limited liability company Razaghi formed in November 2010 ("Razaghi Healthcare AZ").  Razaghi was the sole member of Razaghi Healthcare AZ.  The CEO Services Contract increased Razaghi's compensation above what was provided in the Second MMA Addendum in a number of ways:

        i.    First, the CEO Services Contract increased Razaghi Healthcare AZ's base compensation for work as Sage Memorial's CEO from $180,000 to $364,000 plus additional sums under certain conditions.

ii.    Second, the CEO Services Contract gave Razaghi Healthcare AZ a $25,000 one-time bonus in consideration for work he had done for Sage Memorial through MMA.

iii.    Third, the CEO Services Contract provided that the Sage Board would review Razaghi Healthcare AZ's performance annually and set an annual performance bonus.

iv.    Fourth, the CEO Services Contract provided that Sage Memorial would pay Razaghi Healthcare AZ a retention bonus equal to 240 hours at a rate of $175 per hour each year.  At $175 per hour and 240 hours per year, retention bonus amounted to an additional $42,000 each year.

v.    Fifth, the CEO Services Contract provided that Sage Memorial would pay Razaghi Healthcare AZ, and more particularly, Razaghi himself, employee benefits.

vi.    Sixth, the CEO Services Contract entitled Razaghi Healthcare AZ severance pay in the amount of $364,000 if Sage Memorial terminated the contract for cause and $364,000 for each four years of Razaghi's service as CEO. To ensure that Razaghi was immediately entitled to four years of service as Sage Memorial's CEO, the CEO Services Contract stipulated that Razaghi began serving as Sage Memorial's CEO in August 2007.

c.    In FY 2011, Sage Memorial paid Razaghi Healthcare NV $37,916.

d.    In FY 2011, Sage Memorial paid $515,189 to Razaghi Morgan Healthcare ("Razaghi Morgan"), a company formed by Razaghi and Morgan during the Kory State Court Litigation.

e.    In FY 2011, Sage Memorial paid Manuel Morgan $12,469.

f.    In September 2012, Sage Memorial paid Razaghi Healthcare AZ a bonus in the amount of $1,842,549.27.

g.    In the FY 2012, Sage Memorial paid Razaghi Healthcare NV a total of $1,925,237.

h.      In FY 2012, Sage Memorial paid Morgan Razaghi a total of $1,731,258.

i.      <u>First Amendment to the CEO Services Contract</u>. Razaghi Healthcare AZ had assigned the original CEO Services Contract to Razaghi Healthcare NV in January 2013.  On May 17, 2013, the Sage Board approved the First Amendment to the CEO Services Contract directly with Razaghi Healthcare NV.  It was deemed to be effective as of March 30, 2013.  The First Amendment to the CEO Services Contract increased Razaghi's compensation above what was provided in the original CEO Services Contract in a number of ways:

i.      First, though Razaghi Healthcare NV's hourly rate remained $175 per hour, the First Amendments to the CEO Services Contract removed the $364,000 cap, freeing Razaghi to bill far greater amounts for his time.

ii.      Second, the First Amendment to the CEO Services Contract maintained the incentive fee.

iii.      Third, the First Amendment to the CEO Services Contract maintained the retention bonus that entitled Razaghi to additional compensation in the amount of 240 hours per year at a rate of $175 per hour.

iv.      Fourth, the First Amendment to the CEO Services Contract entitled Razaghi to severance pay in an amount of equal to the average amount paid to Razaghi Healthcare NV by Sage Memorial each year during the most recent four years of service.

v.      Fifth, the First Amendment to the CEO Services Contract entitled Razaghi Healthcare NV to require Sage Memorial to pay a "fair market" rate for any of Razaghi Healthcare NV's employees that performed services for Sage Memorial.

88.      Even though Razaghi Healthcare NV had entered into the First Amendment to the CEO Services Contract only two months earlier, and had agreed that his hourly

billing rate would be $175 per hour, on or about May 20, 2013, Razaghi caused Razaghi Healthcare NV to bill Sage Memorial $530 per hour for his time, with a $175 per hour discount for a net rate of $355 per hour. The Sage Board never approved increasing Razaghi's hourly compensation above the $175 per hour approved in the First Amendment to the CEO Services Contract. Neither Razaghi nor Razaghi Healthcare informed the Sage Board that Razaghi had begun billing for his time at the net rate of $355 per hour. He simply started billing at the higher rate. ("First Razaghi Compensation Fraud").

89.    Razaghi Healthcare NV and Razaghi were able to conceal the First Razaghi Compensation Fraud because they controlled the people at Razaghi Healthcare who prepared the bills, the people at Sage Memorial who received, reviewed, and approved the bills, and the people at Sage Memorial who paid the bills.

90.    In FY 2013, Razaghi caused Sage Memorial to pay Razaghi Healthcare NV the sum of $2,997,668 in total compensation.

91.    In FY 2014, Razaghi caused Sage Memorial to pay Razaghi Healthcare NV more than $2,580,164 just for compensation attributable to management fees, incentive fees, and retention bonuses and paid Razaghi Healthcare NV an additional $4,074, 885, for a total amount of $6,655,019.

92.    Beginning in or around May 2015, Razaghi Healthcare continued billing Sage Memorial $530 per hour for Razaghi's time, but reduced the discount from $175 per hour to $30 per hour, resulting in a net rate of $495 per hour. Razaghi Healthcare altered Razaghi's compensation rate even though the First Amendment to the CEO Services Contract still contractually authorized only $175 per hour. Razaghi Healthcare increased Razaghi's hourly rate without knowledge, approval, or consent of the Sage Board. Because they completely controlled Sage Memorial, Razaghi caused Sage Memorial to pay the invoices billing Razaghi's time at the net rate of $495 per hour.

93.    In FY 2015, Razaghi caused Sage Memorial to pay Razaghi Healthcare NV more than $2.6 million just for compensation attributable to management fees, incentive

fees, and retention bonuses and paid Razaghi Healthcare NV a total amount of $8,209,646.

94.     On or about August 3, 2016, Razaghi Healthcare NV invoiced Sage Memorial for a bonus in the amount of $6,785,000.  Razaghi caused Sage Memorial to pay the invoice.

95.     In FY 2016, Razaghi caused Sage Memorial to pay Razaghi Healthcare NV more than $9.4 million just for compensation attributed to incentive fees, management fees, and retention bonuses and excluding hourly compensation for himself or any Razaghi Healthcare NV employees.

96.     In FY 2017, Razaghi caused Sage Memorial to pay Razaghi Healthcare NV more than $2,808,697 million just for compensation attributed to incentive fees, management fees, and retention bonuses and excluding hourly compensation for himself or any Razaghi Healthcare NV employees.

97.     In FY 2018, Razaghi caused Sage Memorial to pay Razaghi Healthcare NV more than $13.3 million for compensation attributed to incentive fees, management fees, and retention bonuses, including the $10.8 Million Razaghi and Hasan fraudulently transferred from Sage Memorial's bank accounts in August 2018, but excluding hourly compensation for himself or any Razaghi Healthcare NV employees.

**Razaghi Begins to Build His Empire**

98.     After developing a sufficient and consistent stream of income from Sage Memorial, Razaghi began work to expand this business to medical facilities in other communities in the Navajo Nation.

99.     Razaghi's plan involved duplicating the model he had been using at Sage Memorial: (1) locate communities in the Navajo Nation that wanted to build new, or upgrade existing, medical facilities, (2) help the communities obtain tribal designations from the Navajo Nation so the medical facilities could contract directly with IHS for a steady stream of funding, (3) enter into management contracts, virtually identical to the CEO Services contracts with Sage Memorial, that would give Razaghi complete control

over all aspects of the medical facilities' operations and finances, (4) provide lucrative compensation packages for himself and the specific entities he created to manage each facility.

100.    Beginning in 2017, Razaghi started working with a number of communities in the Navajo Nation.  Among others, Razaghi entered into agreements with, or proposed agreements to, communities seeking medical facilities in Four Corners Regional Health Center, Four Corners, Arizona; Tse'Bit'a'i' Health Center Corporation, Shiprock, New Mexico; Dzil Na' Oodilii Health Corporation in New Mexico (collectively, the "Razaghi 638 Entities").

101.    At various Sage Board meetings, Razaghi informed the Board about his efforts in other Navajo Nation communities and solicited the financial support from the Sage Board for some startup costs associated with the Razaghi 638 Entities.  He also used the Sage Board members as props to promote his new ventures and to receive, for himself, the benefits of establishing medical facilities as tribal organizations, fund them through IHS, and delegate management of the facility to Razaghi.

102.    Though Razaghi reported to the Sage Board about his involvement with the Razaghi 638 Entities, he concealed the full nature and extent to which he was using Sage Memorial funds to expand his business to the Razaghi 638 Entities.  For example, Razaghi did not inform the Sage Board that he was billing Sage Memorial for significant amounts of time Razaghi Healthcare employees, including Razaghi, spent working on the Razaghi 638 Entities.  Razaghi did not inform the Sage Board that he would cause Sage Memorial to reimburse Razaghi Healthcare NV for lawyers' fees, consultants' fees, and lobbyists' fees that were being used exclusively to develop the Razaghi 638 Entities and for which Sage Memorial would never be reimbursed.

103.    From 2017 through August 2018, when he ceased controlling Sage Memorial, Razaghi used his complete control over Sage Memorial and, in particular, Sage Memorial's financial resources to fund the expansion of his personal business ventures.

**Razaghi And Razaghi Healthcare NV Are Accused Of Committing A Massive Fraud On The Federal Government**

104.    On October 16, 2014 several whistleblowers (which included physicians, dentists and the former Controller of Sage Memorial) filed a complaint in the United States District Court for the District of Arizona, Case No. 3:14-cv-8196-PCT-SRB, naming Razaghi and others with having violated the False Claims Act, 31 U.S.C. § 3729 et. seq., from 2007 onwards.

105.    Later, the whistleblowers filed a First Amended Complaint on August 31, 2016 which alleged, among other things, the following: "[a]t the center of the fraudulent activity that caused violations of the FCA is Defendant Ahmad Razaghi who devised a massive scheme through which he abused his relationship with [Sage Memorial] to divert millions of dollars of federal funds provided by federal programs and contracts from Sage to himself and the other [d]efendants" and that "Razaghi caused Sage to enter into contracts with individuals and related business entities over which he exercised control and undue influence, all to siphon federal funds to himself and away from their intended purposes." *See* Exhibit A.

106.    Razaghi used Sage Memorial's funds to pay his attorneys to both defend the claim and to file a defamation claim against the whistleblowers.

**Sage Memorial Receives Over $122 Million In Settlement Money From The Federal Government On The Condition That Razaghi Cannot Personally Benefit From The Settlement**

107.    Around the same time the whistleblower complaint was pending, the Indian Health Service ("IHS") notified Sage Memorial that its contracts with the federal government would not be renewed.  Sage Memorial responded by initiating litigation on October 23, 2014 in the United States District Court for the District of New Mexico, Case No. 1:14-cv-0958-JB-KBM, naming Sylvia Burwell, in her official capacity as the Secretary of the United States Department of Health and Human Services (of which IHS is a component agency), as a party-defendant.

108.    In addition to claims challenging a lack of funding by IHS, the *Burwell* lawsuit also alleged that the federal government had breached a number of prior contracts

from 2009 through 2013.  The federal judge presiding over that case wrote a decision detailing the history of the parties' dealings.  *See* Navajo Health Foundation – Sage Memorial Hospital, Inc. v. Burwell, *et. al*., 263 F.Supp.3d 1083 (D.N.M. 2016).

109.    The United States eventually agreed to a settlement (in principle) of the litigation with Sage Memorial on or about December 16, 2016.  The United States agreed to pay the hospital $122,500,000.00.  The settlement document memorializing the parties' agreement provided that payments must be used to fund Indian healthcare services, including ancillary services to the hospital or for any other legitimate healthcare purpose.  However, the settlement agreement also expressly prohibited the hospital from providing payment to any management company or affiliated entity.  Notably, the agreement also singled out Razaghi by name by further providing that "[i]f Ahmad R. Razaghi or any current officer or officer-level employee of a Razaghi-related entity is convicted of a felony crime of fraud related to the management of [the] [h]ospital or any federal health care program operated by [the Hospital] within 5 years of the effective date of this Settlement Agreement, IHS may conduct additional monitoring on the expenditure of the Settlement sum . . .."  This provision clearly evinced the federal government's concerns regarding Razaghi's potential for fraudulent conduct.

110.    Following Sage Memorial's agreement to resolve the *Burwell* litigation, and with knowledge of the amount of money Sage Memorial would be receiving and the federal government's insistence on his exclusion as an explicit condition of the settlement, there was a marked change in Razaghi's attitude and behavior.  He became increasingly resentful of what he told others was a windfall for "the Indians" which he believed he should have been given credit for and received some benefit from.

111.    With the federal government having expressly excluded Razaghi and Razaghi Healthcare NV from receiving any of the settlement funds paid to Sage Memorial, Razaghi had to devise a scheme to justify even more compensation than he had previously been taking from Sage Memorial.

**Razaghi Defrauds Millions of Dollars From Sage Memorial Through Systemic Overbilling and Billing Plaintiff for Razaghi's Personal Expenses and RAZAGHI HEALTHCARE NV Expenditures.**

112.    From May 1, 2015 (and before) through August 31, 2018, Razaghi Healthcare NV utilized its near complete control over the administration of Sage to systematically bill the Plaintiff for personal expenditures of Razaghi; bill Plaintiff for services to third parties who in fact did not render services to the Plaintiff but instead rendered services to Razaghi Healthcare NV or the racketeering enterprise described more fully below; and bill Plaintiff for services which were not actually rendered by Razaghi Healthcare NV but reimbursed to Razaghi Healthcare NV by Plaintiff.    Razaghi Healthcare NV's near total control over the administration of the Plaintiff's finances enabled Razaghi Healthcare NV to illegally bill Plaintiff for these inappropriate and illegal services, which are identified in Invoices which were e-mailed to Plaintiff on a monthly basis for years.   Each wiring of an invoice to Plaintiff caused by the Defendants contained multiple entries of unwarranted and unsupported services and constitutes racketeering activity, which will be delineated in detail further in this FAC [*See* Invoice Fraud Predicate Acts].

**Razaghi Defrauds $10.8 Million From Sage Memorial Under The Pretense Of A Contract Dispute**

**Based Upon Omissions And Concealment Of Material Facts During A Board Meeting, The Sage Board Approves An Unconscionable Contract Which It Had No Meaningful Opportunity To Review And For Which There Was No Urgency To Approve Except To Benefit Razaghi.**

113.    Approximately six months after the federal government had agreed in principle to pay Sage Memorial over $122.5 million, Razaghi determined that he should have a new management contract in place, even though the existing contract was not scheduled to expire for another three years.  To that end, a Sage Board meeting was called on June 16, 2017 at which time Stephen Hoffman, ostensibly acting as special counsel on behalf of Sage Memorial, urged the Sage Board to approve a second amendment to Razaghi Healthcare NV's original contract which was more favorable to Razaghi than the First Amendment to the CEO Services Contract.  As Sage Memorial's special counsel,

Hoffman owed the corporation duties of loyalty, honesty and good faith. He stood in a trusted, fiduciary relationship with Sage Memorial and the Sage Board. The Sage Board at the time consisted of the following six individuals: Stenson Wauneka, Andrew Simpson, Linda Yazzie, Maybelle Kelewood, Joyce Moore and Ray Ann Terry. None of the members of the Sage Board, with the possible exception of Wauneka, had been provided with a copy of the agreement by Hoffman or anyone else prior to the June 16, 2017 meeting, despite the fact that the Sage Board rules and custom required that members be provided with important documents 24-hours in advance of any meeting so they could conduct a meaningful review prior to any vote being taken. None of the members of the Sage Board had any formal legal training or knowledge about contract interpretation. In addition, English is neither the native or first language of many of the members of the Sage Board.

114.    Hoffman presented the second amended management services contract to the Sage Board through a power point presentation and recommended they approve it by simply voting "yes." Insufficient details were provided by Hoffman regarding the implications of the various contract provisions/changes set forth in the 17-page agreement, especially with respect to section 5.D of the contract. That provision bestowed an extremely lucrative "termination payment" upon Razaghi in the event he terminated the contract or the Sage Board terminated it for certain reasons

115.    With respect to the termination payment provision of the second amended management services contract, the language of the contract (section 5.D(2)) provided the following:

> In the event that this Contract expires, or RH terminates this Contract for cause, or the Corporation elects to terminate this Contract at any time prior to expiration of this Contract for any Reason other than those listed as "cause" in Section 4.A, **the Corporation shall, in addition to any other amounts due under this Contract, pay RH a Termination Payment <u>in an amount equal to the average of the amount paid to RH by the Corporation each year during the most recent four years of service, including the year of expiration or termination</u>**, which shall be prorated through the actual date of such expiration or termination.

27

(emphasis supplied). Hoffman, acting as the Sage Board's attorney, but whose invoices for fees were approved and paid by Razaghi Healthcare NV employees with Sage money, recommended that the Sage Board approve this exceptionally unfavorable and one-sided contract. Hoffman did not fully or adequately explain the terms of the Second Amendment to the CEO Services Contract. He did not identify potentially disadvantageous provisions that he thought the Sage Board should examine closely or take time to understand.

116. In addition to the termination payment clause, the Second Amendment to the CEO Services Contract extended the contract to the year 2025.

117. The version of the Second Amendment to the CEO Services Contract presented to Sage Board, approved by the Sage Board, and signed by Chairman Wauneka on behalf of the Sage Board in June 2017 specifically provided that the hourly rate for Razaghi's time $175 per hour. The same rate the Sage Board previously approved in 2013 as part of the First Amendment to the CEO Services Contract.

118. Razaghi and Hasan also continued to conceal the First Razaghi Compensation Fraud. Even though the June 2017 version of the CEO Services Contract represented that Razaghi's billing rate would be $175 per hour, Razaghi Healthcare, Razaghi, and Hasan did not inform the Board that Razaghi Healthcare (i) had been billing Razaghi's time at a net rate of $355 per hour since May 2013, (ii) had been billing Razaghi's time at a net rate of $495 per hour since May 2015, and (iii) intended to continue billing Razaghi's time at $495 per hour notwithstanding their representations in the Second Amendment to the CEO Services Contract that Razaghi would bill his time at $175 per hour (the "Second Razaghi Compensation Fraud").

119. In addition to concealing both the First Razaghi Compensation Fraud and the Second Razaghi Compensation Fraud, the Second Amendment to the CEO Services Contract stated it would become effective retroactively to July 6, 2016, almost one year earlier.

120.    One year prior to the execution of the Second CEO Amendment to the CEO Services Contract, the Sage Board approved an "escrow account." This account was established on June 16, 2016 but subsequently modified by a hand-written change and made effective on July 6, 2016 which was exactly 20-days after the effective date of the Second Amendment of the CEO Services Contract. Upon information and belief, Razaghi modified the effective date of the escrow account to benefit himself under the terms of the Second Amendment to the CEO Services Contract.

121.    The escrow account was established at Wells Fargo bank and funded with approximately $4.3 million. The sole purpose of the account was to pay money upon termination under specific circumstances. Razaghi on behalf of Razaghi Healthcare NV acknowledged this fact when he signed the Escrow Agreement.

122.    In furtherance of the effort to conceal the First Razaghi Compensation Fraud and the Second Razaghi Compensation Fraud, Razaghi Healthcare NV and Razaghi, in December 2017, presented the Sage Board with what he represented was the same Second Amendment to the CEO Services contract presented to, and previously approved by, the Sage Board in June 2017. He represented to the Sage Board that the new version of the Second Amendment to the CEO Services Contract consisted of nothing more than "corrections to minor typographical errors."

123.    In furtherance of the effort to conceal the First Razaghi Compensation Fraud and the Second Razaghi Compensation Fraud, Razaghi did not disclose that the December 2017 version of the Second CEO Services Contract increased his compensation from $175 per hour to $495 per hours. Razaghi knowingly and intentionally deceived the Sage Board when he concealed the truth about his compensation and materially omitted informing the Sage Board that one of the "minor typographical" corrections involved increasing Razaghi's hourly rate from $175 per hour to $495 per hour and that the rate increase would be retroactive to June 2016. ("Third 2017 Razaghi Compensation Fraud"). Had the Sage Board been told the truth concerning Razaghi's billing rate and the history of how he came to be paid $495 per hour, the Sage Board would not have approved the

December 2017 version of the Second CEO Services Contract and would have taken action concerning Razaghi's deceptive billing.

124.    After the Sage Board was deceived into approving the December 2017 version of the Second Amendment to the CEO Services Contract, Razaghi and Sage Board Chairman Wauneka manipulated the document to make it appear as though it was the same version of the Second Amendment to the CEO Services Contract approved by the Sage Board in June 2017.  Because of the manipulations, observers would not realize the June 2017 and December 2017 versions of the Second Amendment to the CEO Services Contract contained materially different terms.

**With A Favorable Contract In Place That Was Approved Under Dubious Circumstances, Razaghi Engineers The Fraudulent Taking Of $10.8 Million Under The Pretense Of A Contract Dispute**

125.    On July 11, 2018 Nicole Hardy ("Hardy"), an accounts specialist in the finance department of Sage Memorial, received an email request from Razaghi conveyed through Tom Matenaer ("Matenaer"), the hospital's Controller, to produce a "cost report" (billing rates v. discount rates) for the period 2014 through 2017.

126.    On July 16, 2018, Hardy completed the cost report spreadsheet and emailed it to Matenaer and Sage Memorial's staff accountant, Mary Arave ("Arave").   Both Matenaer and Arave were hired as contract employees by Razaghi through the Robert Half staffing company.

127.    On July 2018, Razaghi contacted Christi El-Meligi ("CEM") and Netrisha Dalgai ("Dalgai"), both Razaghi Healthcare NV employees, assigned by Razaghi to work at Sage Memorial, to tell them they were "doing a great job."  CEM was assigned to work at Sage Memorial as Co-CEO (serving alongside Razaghi) and Dalgai was assigned to serve as Chief Operating Officer ("COO").

128.    On July 19, 2018, CEM held a meeting with Matenaer and Sage Memorial's human resources director Gary Pahe to discuss Sage Memorial's obligation to comply with Navajo Nation preference in employment laws and issues related to the finance department and issues with then incomplete financial audits.

30

129.    On July 20, 2018, without any prior notice, Razaghi circulated an email informing staff that CEM was to be "re-assigned and would be removed" from her position at Sage.  Later that same day, Sage Board member Ray Ann Terry circulated an email to Sage Board members to request a special meeting to discuss issues/concerns with respect to the Razaghi Healthcare NV contract and removal/reassignment of CEM.

130.    On July 23, 2018 the Sage Board held a special meeting and discussed retaining independent counsel to review and advise them on the Razaghi Healthcare NV management contract.  The Sage Board concluded that this independent counsel should not be someone selected by Razaghi, as he had done with Hoffman and others.  Razaghi strongly objected to this decision and, via email, requested a copy of "the current Sage bylaws and conflict of interest policy."  A short while later, the Sage Board engaged attorney Jeff Davis, Esq. ("Davis") of the national and well-respected law firm Barnes & Thornburg, LLP to review the second amended agreement and Razaghi's relationship with Sage Memorial.  After engaging Davis, a former federal prosecutor, the Sage Board had approximately five meetings with him and one meeting with an independent financial auditor to determine the state of affairs with Sage Memorial's finances and the deficiencies related thereto.

131.    In response to his failed efforts to stop the Sage Board from engaging independent counsel, Razaghi convened an emergency meeting between himself and his Razaghi Healthcare NV management staff.  Razaghi invited Sage Board Chairman Wauneka to attend this meeting but excluded the other Sage Board members.

132.    By letter dated August 2, 2018 (mailed and emailed that same day), counsel for Razaghi Healthcare NV and Razaghi (Christopher Stachowiak) wrote to Board Chair Wauneka (who had only days earlier met one-on-one with Razaghi and was on friendly terms with him) notifying him of "prospective breaches and/or interference" with the management contract with Sage.  In support of this broad allegation, Stachowiak's letter cited "unauthorized communications and actions between certain Board members and Christi El-Meligi and Netrisha Dalgai."  Stachowiak's letter opined that this amounted to

"contract interference and a material breach of the contract." The letter concluded by stating "any attempt by the Board to cause the Contract to expire or terminate early will result in Corporation's immediate obligation to pay the Termination Payment to Razaghi Healthcare NV in accordance with the Contract, which will be several million dollars." Notwithstanding the letter's reference to an "immediate obligation," the second amended CEO services contract specifically provided Sage Memorial with a 30-day cure period – a fact that went unmentioned in Stachowiak's letter. Accordingly, to the extent the August 2, 2018 letter was notification of a prospective breach, the Sage Board on behalf of Sage Memorial would have had until September 2, 2018 to cure any breach under the terms of the contract that Razaghi himself urged the Sage Board to ratify.

133. On August 13, 2018, Wauneka sent an email to Davis and two other Sage Board members, with Razaghi copied on the email, in which he stated "I believe we are at a point in time where the question is whether the Board wants to continue its relation with Razaghi Development Company, LLC." The email was received by the recipients as suggesting the Chairman of the Sage Board himself believed that Sage Memorial was in breach of the CEO services contract and was perceived as nothing more than an attempt to bolster the August 2, 2018 letter by Stachowiak. The Sage Board's independent counsel Davis responding by stating the following:

> Mr. Stenson I have yet to meet you via e-mail, telephone or otherwise. Thank you for sending the e-mail, I see you have included Mr. Razaghi, the CEO. **I would respectfully disagree with your statement that the Board is [at] a point where the question is whether the Board wants to continue its relationship with Razaghi Development Company. Quite the contrary, I have had the pleasure of talking with other Board members and they are ready and willing to work with all** and invigorate the Board so that it is an equal partner in insuring that members of the Navajo Nation are provided services by Sage Memorial Hospital received the best possible medical treatment and programs at a cost-efficient medical facility.

(emphasis added).

134. On August 20, 2018 the Sage Board convened an executive session meeting, with Davis and the hospital's independent financial auditor Heather Grech

("Grech") appearing by telephone conference call. Apart from the Sage Board, Davis and Grech, no one else was present in the room. The three main topics discussed during that meeting were the Sage/Razaghi Healthcare NV management contract, payments made to Razaghi Healthcare NV and finally the fact that the Sage Board would not be approving an incentive bonus for Razaghi that year due to the mismanagement of Sage Memorial's finance department and issues surrounding the audit being performed at the same time. The information that Razaghi was not going to be paid an annual incentive bonus was relayed to him by his staff. After learning that the Sage Board was not going to pay Razaghi Healthcare NV an incentive bonus, Razaghi devised a plan to take $10.8 million from Sage Memorial ("$10.8 Million Fraud").

135.    Seven days after the August 20, 2018 meeting, or on August 27, 2018, Razaghi caused the fraudulent taking of more than $10.8 million from Sage Memorial. Specifically, the following occurred:

a.    At approximately 9 a.m., Hardy received a telephone call directly from Hasan, the contract CFO employed by Razaghi Healthcare NV but with fiduciary duties owed to Sage Memorial, requesting status and payment on three invoices sent that same day. In submitting these invoices, Razaghi Healthcare NV and Razaghi made "representations" regarding the legitimacy of the statements contained therein which, at the time they were made, they knew were not true.

b.    Hardy checked the invoices and determined the total was $11,048,517.71. Invoice #1369 was for a total of $10,855,134.15. Hardy checked for backup documents and determined there were none – the only attachment was her July 16, 2018 "cost report" spreadsheet. Finally, Hardy discovered the "re" on the invoice merely referenced a "Contract Termination Fee, Section 5.D." Worried about the size of the invoice, never having processed such a large amount and seeing that there was no backup and the invoice only referenced a contract provision, Hardy went to her supervisor Arave and then ultimately to Arave's supervisor Matenaer. Matenaer advised Hardy that he would speak to Hasan about

the matter, specifically to request the backup documents and to obtain information regarding the coding issues.

c.     Following a short break, Hardy returned to the office and noticed Matenaer's inquiry e-mail to Hasan on the two issues – the lack of backup documents and coding issues. However, in the meantime, she also discovered that Hasan, the CFO and Matenaer's superior, had left a message for her to call him back immediately. Upon returning his call, Hardy was ordered by Hasan to immediately input the invoices into Sage Memorial's electronic banking system for payment and to code the payment for invoice #1369 as "Management Services Fees" so that he could approve the payment to Razaghi Healthcare NV.

d.     At 10:50 a.m., Hardy completed inputting invoice #1369 into Sage Memorial's payment system (Meditech Financial Management System) and Sage Memorial's online banking portal.

e.     At 10:53 a.m., Hardy notified Hasan that she has completed uploading invoice #1369 in Sage Memorial's payment system.

f.     At 10:59 a.m., Hasan accessed Sage Memorial's system and transferred $500,000.00 from the hospital's IHS Funding Account and $10,855,000.00 from Sage's Third-Party Revenue Account to Sage's General Operating Account to cover the additional outstanding checks in order to avoid an overdraft and ensure the payment of the $10.8 million invoice.

g.     At 11:02 a.m., Hasan, as contract CFO, approved a $10.8 million payment to Razaghi Healthcare NV. Pursuant to the scheme to defraud, Razaghi Healthcare NV was paid by "automated clearing house" or ACH payment instantly and the funds were taken from Sage Memorial's General Operating Account at Wells Fargo – not the Escrow Account, which had been created for the specific purpose of paying the termination fee. Razaghi was aware that in order to release any funds from the Escrow Account, he would need a second signature from a member of the Sage Board. Therefore, pursuant to the scheme to defraud, Razaghi

and Hasan used their access to, and control over, Sage Memorial's bank accounts to fraudulently initiate and approve the transfer of $10.8 million from Sage Memorial's bank account to Razaghi Healthcare NV's bank account.

h.    The invoice for this payment falsely stated that Sage Memorial owed Razaghi Healthcare NV $10,855,134.15.  At the time the invoice was submitted, both Razaghi and Hasan knew the invoice was false.

i.    These fraudulent acts were also concealed from the Sage Board, which was unaware of the misappropriation of the $10.8 million from Sage Memorial's bank account until the afternoon of August 30, 2018 when a Sage Memorial Employee contacted one of the Sage Board members concerning the unauthorized wire transfer which was sent in furtherance of the scheme to defraud. The Sage Board immediately contacted attorney Jeff Davis to inform him of the misappropriation.  The Sage Board then met with Mr. Davis the next morning to draft and vote on a resolution to terminate the Second CEO Services Contract.  The Sage Board unanimously voted to terminate the contract immediately and instructed the staff of Sage Memorial to secure its bank accounts.

136.    Meanwhile, after having just misappropriated $10.8 million from Sage Memorial's bank account, Razaghi sent a letter to the Sage Board dated August 29, 2018 expressing his "concerns over the state of the Board of Directors" and "an invalid purported agreement with a Michigan attorney."  The "Michigan attorney" referenced by Razaghi was Davis.  In his letter Razaghi, an independent contractor with the hospital, notified the Sage Board that Davis "has no authority to represent Navajo Sage under governing Navajo law and will not be paid . . ."  The import of this letter, among other things, was that it demonstrated that not only did Razaghi control the hospital's finances and who would and would not be paid, but he believed he could control the Sage Board's determination regarding the selection of its own legal counsel – a fact presumably not lost on attorneys Hoffman and Stachowiak both of whom were copied on the letter. Notwithstanding Razaghi's directives to the Sage Board, his letter notably <u>failed</u> to

disclose that only two days earlier he had withdrawn more than $10.8 from the hospitals general operating account. Oddly, if he believed he was entitled to that money because the Sage Board had breached his contract and that the contract was terminated, why did he believe he could continue lecturing and dictating to the Sage Board who it could retain as its own legal counsel among other things? The letter simply demonstrates the sheer contempt, condescension and arrogance Razaghi held toward the Sage Board.

**Razaghi Attempts to Continue to Defraud Sage Memorial Following His Termination**

137. After fraudulently misappropriating more than $10.8 million from Sage Memorial, and after the Sage Board voted to terminate the Second CEO Services Contract, Razaghi continued to attempt to defraud the hospital for the following matters through the use of electronic mail by seeking payments for services never rendered:

a. September 11, 2018 (invoice #1370) in the amount of $31,678.32 for credit card, legal and executive leadership services;

b. September 6, 2018 (invoice #1371) in the amount of $74,448.08 for management incentive services fee;

c. September 6, 2018 (invoice #1372) in the amount of $129,986.76 for management consulting services;

d. September 6, 2018 (invoice #1373) in the amount of $106,120.38 for executive leadership, legal and professional services;

e. October 4, 2018 (invoice #1374) in the amount of $156,694.93 for management consulting services (with interest charges);

f. November 1, 2018 (invoice #1382) in the amount of $129,331.55 for management consulting services (with interest charges);

g. November 27, 2018 (invoice #1383) in the amount of $511,395.11 for management consulting services for "transition period" (with interest charges);

h. December 1, 2018 (invoice #1384) in the amount of $443,996.71 (with interest charges) for "legal and professional expenses;"

i.      January 2, 2019 (invoice #1385) in the amount of $235,873.85 (with interest charge) for "management consulting services" and "incentive fees."

138.    Many of these invoices, while seeking exorbitant sums, totaling close to $1.9 million, provide little to no backup such that the hospital can meaningfully discern what it is being requested to pay for beyond vague references to "management services."

139.    After the filing of the initial Complaint on February 22, 2019, through the present time, Razaghi and, upon information and belief, persons under his control, have improperly contacted the Plaintiff's Board of Directors and Officers through text messages and other means, ostensibly to put pressure on the Board to withdraw this Complaint.  Even after his involvement at Sage Memorial ended, Razaghi Healthcare NV, Razaghi, and Hasan continued to attempt to defraud Sage Memorial through the transmittal by e-mail (wire) invoices for payment of services not rendered to Sage Memorial or not for the benefit of Sage Memorial.

**Fraudulent Concealment.**

140.    Until the Sage Board terminated Razaghi Healthcare NV and excluded it from its role as CEO, Sage Memorial had no knowledge of Razaghi Healthcare NV's conduct and the violations alleged in this Fourth Amended Complaint.  Furthermore, until it took control over its business, financial, and administrative operations and, thereafter, conducted its own review and investigation, Sage Memorial could not have discovered Razaghi Healthcare NV's conduct or violations by the exercise of due diligence because, among other things, Razaghi Healthcare NV, Razaghi, and Hasan took active steps to conceal and avoid disclosure of its misconduct.

141.    From March 2007 through August 31, 2018, Razaghi, MMA, Razaghi Healthcare AZ, Morgan Razaghi Healthcare, Razaghi Healthcare NV (collectively, the "Razaghi Entities") had, at the various times described in this Fourth Amended Complaint, complete control over Sage Memorial.  Their control extended to every material aspect of Sage Memorial's business, operations, and financial activities.  Among other things:

a.     All of the non-medical employees who worked at Sage Memorial were actually employees of Razaghi Healthcare NV and were directed and supervised by Razaghi Healthcare NV, Razaghi, and Hasan.  In particular, all employees who were responsible for creating, reviewing, transmitting, and paying Razaghi Healthcare NV invoices were Razaghi Healthcare NV employees.  No independent Sage Memorial employees were involved in the invoice generation, review, and payment process.

b.     The Chief Financial Officer for Razaghi Healthcare NV was also the Chief Financial Officer for Sage Memorial.  Accordingly, Sage Memorial had no independent financial supervision.

c.     Razaghi Healthcare NV, Razaghi, and Hasan controlled the input, and any decision-making related to the input, of all information into the Sage Memorial accounting and financial reporting systems.

d.     Razaghi Healthcare NV, Razaghi, and Hasan effectively removed all controls and all checks and balances companies typically implement to ensure the proper expenditure of funds.

e.     Razaghi Healthcare NV, Razaghi, and Hasan the preparation, creation, and dissemination of business information, including financial information, relating to Sage Memorial, making him responsible for the financial operations of both companies.

f.     Razaghi Healthcare NV, Razaghi, and Hasan maintained, and operated, a deficient accounting system that did not create audit trials tracking modifications.  The accounting system did not record when changes to financial information were made, who made the changes, or what changes were made.

g.     Razaghi Healthcare NV, Razaghi, and Hasan would not disseminate financial information relating to Sage Memorial to Sage Board members until the day of Board meetings, would generally discuss the information only in executive

sessions where Board members were not allowed to take notes and after which all financial information was retrieved from the Board members.

h.    Razaghi Healthcare NV, Razaghi, and Hasan carefully curated the information it disclosed to the Sage Board.

i.    Razaghi Healthcare NV, Razaghi, and Hasan moved funds amount Sage Memorial bank accounts as needed to distort Sage Memorial's financial performance.

142.    As a result of Razaghi Healthcare NV's, Razaghi's, and Hasan's complete control over all material information, Sage Memorial did not have access to, or control over, independent sources of financial, business, or operational information.    All information relevant to Sage Memorial was created, filtered, curated, and disseminated by Razaghi Healthcare NV, Razaghi, and Hasan.

143.    While Sage Memorial retained independent auditors to review the hospital's financial performance annually, the auditors were limited to financial information provided to them by Razaghi Healthcare NV, Razaghi, and Hasan and, therefore, based their findings on the information.

144.    Despite reasonable and diligent efforts, Sage Memorial could not, under the circumstances, have learned of Razaghi Healthcare NV's, Razaghi's, and Hasan's misconduct as alleged in this Fourth Amended Complaint.    Even today, the scope of fraudulent and criminal misconduct by Razaghi Healthcare NV, Razaghi, and Hasan is not completely known and requires both document and witness discovery because Razaghi Healthcare has retained material information relating to Sage Memorial's business.    Sage Memorial will not be able to obtain that information except through discovery.

145.    Because Razaghi Healthcare NV, Razaghi, and Hasan knew they were engaged in fraudulent and criminal misconduct, they acted intentionally to maintain as much secrecy and deception as possible.    The Razaghi Entities had a long history of

fraudulent conduct dating back to February 2007, when MMA entered into the MMA Agreement.

146.    Razaghi Healthcare NV's, Razaghi's, and Hasan's plan and intention to conceal their fraudulent and criminal misconduct was consistent with their intention to continue their schemes and artifices to defraud Sage Memorial indefinitely.  Their actions were undertaken for the express purpose of precluding detection and disclosure of the misconduct described in this Fourth Amended Complaint.  As a result of their efforts to conceal, Razaghi Healthcare NV, Razaghi, and Hasan prevented discovery or disclosure of their fraudulent misconduct until approximately October 31, 2018, when Sage Memorial was able to begin its investigation.

147.    As a result of the fraudulent concealment by Razaghi Healthcare NV, Razaghi, and Hasan, Sage Memorial could not have reasonably discovered before October 31, 2018.

148.    By virtue of Razaghi Healthcare NV's, Razaghi's, and Hasan's fraudulent concealment, the statute of limitations has been tolled with respect to any claims that Sage Memorial has arising from the conduct alleged in this Fourth Amended Complaint.

## COUNT ONE
## FEDERAL CIVIL RICO – 18 U.S.C. § 1962(c)
### (Against Defendants Razaghi and Hasan)

149.    Plaintiff repeats and incorporates by reference each of the allegations set forth in the preceding paragraphs.

### A.    The Applicable Statutes

150.    Under 18 U.S.C. § 1962(c) it is unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt."

151.    Under 18 U.S.C. § 1962(d), it is unlawful to conspire to violate any of the RICO substantive provisions, including section 1962(c).

152.    Under 18 U.S.C. § 1964(c), a private right of action exists for any person injured in his business or property by reason of violation of § 1962.  Section 1964(c) provides for threefold the damages sustained as a result of recovery for the cost of suit including reasonable attorney fees.

**B.    The Enterprise**

153.    Razaghi Healthcare NV is an Enterprise within the meaning of 18 U.S.C. § 1961(4).  Under 18 U.S.C. § 1961(3) a "person" is defined to include any individual or entity capable of holding a legal or beneficial interest in property.  Defendant Razaghi, the sole owner and manager of Razaghi Healthcare NV, and Hasan, a senior consultant hired by Razaghi Healthcare NV, with others conducted and managed the affairs of Razaghi Healthcare NV.

154.    In addition, Razaghi and Hasan, as well as other individuals and entities that associated with each other, also constitute an association in fact Enterprise ("Razaghi Medical Management Enterprise") within the meaning of 18 U.S.C. § 1961(4).  This association in fact enterprise functioned for the purpose of defrauding Sage Memorial and enriching Razaghi Healthcare NV and the Enterprise's members and associates.  Each Defendant in Count One conducted the affairs of the association in fact Enterprise or acted at the direction of Razaghi in the conduct of the affairs of the Razaghi Medical Management Enterprise.

155.    At all times relevant to this Fourth Amended Complaint, members and associates of the Razaghi Medical Management Enterprise functioned together as a continuing unit, with a common purpose (i.e. to devise schemes to defraud Sage Memorial of monies through systematic overbilling, fraudulently billing for services that were unrelated to Sage Memorial and were for the benefit of Razaghi Healthcare NV or the Razaghi Medical Management Enterprise, including the mail and wire fraud described with regard to the Razaghi 638 Entities, the fraudulent taking of an illegally imposed "termination fee," and  continued attempts to defraud Sage Memorial).  Razaghi was the leader of Razaghi Healthcare NV and the Razaghi Medical Management Enterprise.  He

directed the other members of the Enterprise, including Hasan, to engage in fraudulent and systematic overbilling, billing for services unrelated to Sage Memorial, and illegally obtain a "termination fee" through fraud and deceit.

156. Razaghi and Hasan are individuals and are, thus, legally distinct from the legal entity Razaghi Healthcare NV and are also legally distinct from the Razaghi Medical Management Enterprise, the association in fact enterprise consisting of themselves and legal entities controlled by Razaghi, such as Razaghi Healthcare NV and the Razaghi 638 Entities. As described in this Fourth Amended Complaint, Razaghi had near total control over Razaghi Healthcare NV and each of the other entities comprising part of the association in fact enterprise, and Hasan acted pursuant to directions from Razaghi.

157. Razaghi and Hasan were involved in the operation and management of the enterprises. As described in detail in this Fourth Amended Complaint, the legal entity Razaghi Healthcare NV and the alternative association in fact enterprise, consisting of Razaghi, Hasan, and other legal entities controlled by Razaghi such as the Razaghi Healthcare NV and the Razaghi 638 Entities, function with a common purpose and with relationships to each other. Thus, each is separate and apart from the racketeering activity consisting of mail and wire fraud predicate crimes.

158. Razaghi Healthcare NV and the Razaghi Medical Management Enterprise have longevity sufficient to permit each of the RICO Defendants to pursue the Enterprise's purpose.

159. The RICO Defendants' participation in Razaghi Healthcare NV and the Razaghi Medical Management Enterprise was necessary for the successful operation of the fraudulent scheme.

160. The activities of Razaghi Healthcare NV and the Razaghi Medical Management Enterprise affected interstate commerce because they use goods and services that travel in interstate commerce in order to service Sage Memorial and their other clients that are located in states other than Arizona. In addition, both Razaghi Healthcare NV and the Razaghi Medical Management Enterprise affected interstate

commerce by unlawfully obtaining, transmitting, billing and collecting monies through the use wirings Interstate Email, and interstate banking transactions that crossed state lines, all in furtherance of the racketeering scheme, as alleged in this Fourth Amended Complaint.

161.    Each member of Razaghi Healthcare NV and the Razaghi Medical Management Enterprise played a role in the Racketeering Activity alleged in this Fourth Amended Complaint and acted in mutual reliance on one another for the common purpose of defrauding Sage Memorial out of millions of dollars.

**C.    The Racketeering Violation**

162.    From before May 1, 2015, and continuing up through the date of the filing of this Fourth Amended Complaint, Razaghi, and Hasan knowingly and unlawfully conducted or participated, directly or indirectly, in each Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and § 1961(5), all in violation of 18 U.S.C. § 1962(c).

163.    The actions of Razaghi, and Hasan constitute racketeering activity within the meaning of 18 U.S.C. § 1961(1) because they constituted criminal offenses that were indictable as violations of the federal mail fraud statute 18 U.S.C. § 1341 and the federal wire fraud statute 18 U.S.C. § 1343.

164.    The actions constitute a pattern of racketeering activity because Razaghi, and Hasan committed at least two acts of racketeering activity after the effective date of RICO and also within 10 years of each individual act and meet the "relationship" and "continuity" criteria described below.

**D.    Racketeering Activity**

165.    Over the course of years, from before May 1, 2015 and continuing to the present, Razaghi and Hasan knowingly and intentionally engaged in an ongoing pattern of racketeering activity under 18 U.S. Code § 1962(c).

166.   To accomplish their schemes, artifices, and conspiracies Razaghi, Hasan, and other individuals and entities associated with them and with the Enterprises, used the United States Mail or interstate carriers in violation of 18 U.S.C. § 1341 (relating to mail fraud) and interstate telephone and wire services, in violation of 18 U.S.C. § 1343 (relating to wire fraud).

167.   The interstate wire transmissions caused to be sent by Razaghi and Hasan include:

a.     email sent to or from Sage Memorial email accounts.   Sage Memorial uses an email system hosted by Microsoft.  Email sent from or received by Sage Memorial in Arizona crosses Arizona state lines even if both the sender and the recipient are located in Arizona.  All email between Sage Memorial and any person or entity, including Razaghi Healthcare NV, involves the use of wire transmissions in interstate or foreign commerce within the meaning of 18 U.S.C. § 1343 ("Interstate Email").

b.     email sent to or from Razaghi Healthcare NV email accounts. Razaghi Healthcare NV uses an email system hosted by Google.  Email sent from or received Razaghi Healthcare NV in Arizona crosses Arizona state lines even if both the sender and the recipient are located in Arizona.   All email between Razaghi Healthcare NV and any person or entity, including Sage Memorial, involves the use of wire transmissions in interstate or foreign commerce within the meaning of 18 U.S.C. § 1343 ("Interstate Email").

c.     ACH banking transactions involving Sage Memorial's and/or Razaghi Healthcare NV's bank accounts.   Banking transactions that use the banking system's Automated Clearing House network involve the transmission of bank transaction data that crosses multiple state lines within the meaning of 18 U.S.C. § 1343.

168.    Set forth below are specific mailings and wirings caused by Razaghi, Hasan, and others associated with them and the Enterprises pursuant to their schemes to defraud Sage Memorial:

**E.    Systemic Overbilling And Billing For Services Not Provided To Plaintiff From June 1, 2017 Through The Termination Of Defendants In August 2018 ["Invoice Fraud Acts"]**

169.    As part of the Scheme and Artifice to Defraud, Razaghi and Hasan used Razaghi Healthcare NV's role as Contract CEO for, and its complete control over the administration of, Sage Memorial to improperly and illegally obtain money from Sage Memorial by submitting invoices asking Sage Memorial to pay for expenses or services that were not rendered or provided to, or for the benefit of, Sage Memorial, but were instead incurred solely for the purpose of advancing Razaghi's and Hasan's independent business or personal interests. ("Fraudulent Expenses").

170.    To carry out the Scheme and Artifice to Defraud, Razaghi and Hasan, and Razaghi Healthcare NV employees acting under their direction, concealed the Fraudulent Expenses in voluminous invoices submitted monthly by Razaghi Healthcare NV to Sage Memorial ("Monthly Invoices").  The Monthly Invoices were the established mechanism by which Razaghi Healthcare NV sought, and obtained, payment for services it rendered to Sage Memorial pursuant to the CEO Contract and reimbursement for expenses incurred in connection with rendering those services.  The Monthly Invoices were typically lengthy and included time sheets, statements for legal fees, travel expenses, receipts, medical equipment or services supply bills, and many other recurring expense items.

171.    To further conceal the Fraudulent Expenses and to avoid detection of their Racketeering Activity, Razaghi, and Hasan under Razaghi's direction, in October 2017, began separating the Monthly Invoices into multiple invoices so that, as a general rule, invoices for monthly compensation or reimbursement would be less than $100,000.  Under the Burwell Settlement Agreement, invoices submitted to Sage Memorial by Razaghi Healthcare NV for more than $100,000 were subject to audit by IHS.  Therefore, once the Burwell Settlement Agreement became effective, Razaghi, and Hasan

knowingly and intentionally separated the Monthly Invoices into smaller amounts to avoid the $100,000 audit threshold imposed by IHS.

172.    Razaghi and Hasan had the intent to wrongfully and illegally obtain money and property from Sage Memorial by including the Fraudulent Expenses on the Monthly Invoices.    They knew they could carry out their scheme because they completely controlled the procedures, processes, and personnel responsible for preparing, reviewing, approving, and paying the invoices.  At the direction of Razaghi and Hasan, the Monthly Invoices containing the Fraudulent Expenses were (a) prepared by Razaghi Healthcare NV employees; (b) reviewed and approved by Razaghi; (c) transmitted to Sage Memorial by Razaghi Healthcare NV employees at the direction of Razaghi and Hasan; (d) transmitted by Razaghi Healthcare NV employees to Hasan for his review and so he could ensure the invoices would be paid notwithstanding any objection; (d) reviewed at Sage Memorial by Razaghi Healthcare NV employees, (e) approved at Sage Memorial by Razaghi Healthcare NV employees, and (f) paid from Sage Memorial funds by Razaghi Healthcare NV employees.  Each of the employees involved in the process was assigned to work in those positions by Razaghi, and Hasan and was subject to their direction and control.

173.    As a result of the complete control over Sage Memorial by Razaghi and Hasan, and Razaghi Healthcare NV employees acting under the direction and control of Razaghi and Hasan, neither the staff of Sage Memorial nor the Sage Board had the ability to meaningfully review the Monthly Invoices or investigate and identify the Fraudulent Expenses.

174.    Using Razaghi Healthcare NV's role as Contract CEO and its complete control over Sage Memorial, Razaghi and Hasan carried out, facilitated, and concealed the Scheme and Artifice to Defraud and the Pattern of Racketeering Activity.  Razaghi and Hasan used Fraudulent Expenses contained in the Monthly Invoices to obtain money and property from Sage Memorial even though they knew (a) the property, goods, or services for which they sought payment or reimbursement had either never been

performed or (b) had been performed for business or personal benefits separate and apart from Sage Memorial.

175.    Through their operation of Razaghi Healthcare NV, Razaghi and Hasan used the money and property obtained from their Racketeering Activity to enrich themselves and to expand the Enterprise.  Razaghi and Hasan enriched themselves through the money they obtained through the Scheme and Artifice to Defraud that formed part of their Pattern of Racketeering Activity.  Razaghi and Hasan, through their total control over Razaghi Healthcare NV, worked to expand the Enterprise by using their positions and their control over Sage Memorial, and the proceeds they illicitly acquired as a result of their Schemes and Artifices to Defraud, to promote themselves and their services and to fund efforts to obtain contracts to manage other medical facilities within the Navajo Nation.

176.    Among many other things, Razaghi and Hasan took the following actions in furtherance of their effort to expand the Enterprise and to increase the scope of their Racketeering Activity: (a) Razaghi and Hasan assigned Razaghi Healthcare NV staff to spend substantial amounts of time working on "business development" matters relating to acquiring contracts with other medical facilities; (b) Razaghi Healthcare NV, Razaghi, and Hasan retained and paid using Sage Memorial funds a Washington, D.C. lobbying firm to help them obtain approval for new management contracts at Razaghi 638 Entities and other Navajo medical facilities; (c) Razaghi and Hasan retained and used Sage Memorial funds to pay various law firms to form limited liability companies they intended to use in connection with managing the other medical facilities and (d) Razaghi and Hasan and Sage Memorial funds to retain and pay a national consulting firm to "refine a long-term plan for its tribal clients" and develop "a manual that can be used as a baseline for all future restructuring/turnaround projects associated with [Razaghi Healthcare's] future clients."

177.    Consistent with the Pattern of Racketeering Activity through which Razaghi and Hasan conducted the affairs of the Enterprise, Razaghi and Hasan billed to,

and received payment from, Sage Memorial for the activities undertaken for the purpose of expanding the Enterprise to other Navajo medical facilities under IHS jurisdiction, including the Razaghi 638 Entities, and for the purpose of extending their Racketeering Activity to those facilities.

178.    As part of the Pattern of Racketeering Activity, Razaghi, and Hasan sent lengthy invoices to Sage Memorial from June 1, 2017 through August 2018 almost all of which sought payment for Fraudulent Expenses.  Each such Monthly Invoice is a predicate act in the Pattern of Racketeering Activity.  Among the many Monthly Invoices containing Fraudulent Expenses, Razaghi and Hasan submitted and received payment for the following:

a.    The Invoice 1261 Fraud:

i.    Shortly before June 1, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1261 and to seek from Sage Memorial payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1261 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1261 was reviewed and approved by Razaghi and Hasan.

iii.    On or about June 1, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to transmit Monthly Invoice No. 1261 to Sage Memorial by Interstate Email.  Monthly Invoice No. 1261 asked Sage Memorial to pay $499,617.92 for services that Razaghi and Hasan represented Razaghi Healthcare NV employees had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV employees had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice 1261 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1261 were items relating to Razaghi's personal travel from August 26, 2016 through May 11, 2017 in the amount of $8,586.85; a lobbyist in Washington, DC to advance Razaghi's  and Hasan's separate business interests in the amount of $10,491.27; and more than 400 hours of time billed for work performed by Razaghi Healthcare NV employees on matters to develop Hasan's and Razaghi's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1261, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Hasan's and Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1261 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1261 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1261, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $499,617.92, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on July 17, 2017.

b.    <u>The Invoice 1262 Fraud</u>:

i.    Shortly before June 29, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1262 and so that Razaghi Healthcare NV could seek from Sage Memorial payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1262 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1262 was reviewed and approved by Razaghi and Hasan.

iii.    On or about June 29, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to transmit Monthly Invoice No. 1262 to Sage Memorial by Interstate Email.  Monthly Invoice 1262 asked Sage Memorial to pay $654,070.06 for services that Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1262 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1262 were items relating to more than 230 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's and Hasan's

unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.      Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1262, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.      Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1262 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1262 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work that Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.      Based on Monthly Invoice No. 1262, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $654,070.06, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on August 3, 2017.

c.      The Invoice 1263 Fraud:

51

i.      Shortly before July 13, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1263 and to seek from Sage Memorial payment and reimbursement for the fraudulent expenses described below.

ii.     After Monthly Invoice No. 1263 was prepared, Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1263 was reviewed and approved by Razaghi and Hasan.

iii.    On July 13, 2017, Razaghi and Hasan caused Razaghi Healthcare to transmit Monthly Invoice No. 1263 to Sage Memorial by Interstate Email.  Monthly Invoice No. 1263 asked Sage Memorial to pay $445,447.07 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.     Among other items of compensation and expense claimed on Monthly Invoice 1263 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1263 were items relating to a lobbyist in Washington, DC to further Razaghi's and Hasan's separate business interests in the amount of $10,000; legal fees for a law firm performing work for Razaghi Healthcare NV in the amount of $10,924.07; and more than 40 hours of time billed for work performed by Razaghi Healthcare NV employees on matters to develop Razaghi's and Hasan's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.      Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1263, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage

Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1263 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1263 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1263, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $458,447.07, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on August 10, 2017.

d.    The Invoice 1264 Fraud:

i.    Shortly before August 09, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1264 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1264 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial,

Monthly Invoice No. 1264 was reviewed and approved by Razaghi and Hasan.

iii.    On August 09, 2017, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1264 to Sage Memorial by Interstate email.  Monthly Invoice No. 1264 asked Sage Memorial to pay $426,850.63 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1264 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1264 were items relating to a lobbyist in Washington, DC to further Defendants separate business interests in the amount of $10,000; a second lobbyist for work to further Defendants' separate business interests in the amount of $10,000; a law firm performing work for Razaghi Healthcare NV in the amount of $7,237.16; personal travel for Razaghi in the amount of more than $650; and more than 150 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's and Hasan's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1263, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1264 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Defendants failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1264 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1264, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $426,850.63, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on August 10, 2017.

e.    <u>The Invoice 1265 Fraud</u>:

i.    Shortly before August 11, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1265 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1265 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1269 was reviewed and approved by Razaghi and Hasan.

iii.    On August 11, 2017, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1265 to Sage Memorial by

Interstate Email.  Monthly Invoice No. 1265 asked Sage Memorial to pay $301,868.39 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.     Among other items of compensation and expense claimed on Monthly Invoice 1265 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1265 were items relating to a law firm performing work for Razaghi Healthcare NV in the amount of $8,768.50 and more than 65 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's and Hasan's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.     Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1265, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.     Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1265 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1265 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated

to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1265, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $301,868.39, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on September 14, 2017.

f.    The Invoice 1266 Fraud:

i.    Shortly before August 24, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1266 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1266 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice NO. 1266 was reviewed and approved by Razaghi and Hasan.

iii.    On August 24, 2017, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1266 to Sage Memorial by Interstate Email.  Monthly Invoice No. 1266 asked Sage Memorial to pay $434,944.01 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1266 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1266 were items

relating to more than 80 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop  Razaghi's and Hasan's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.       Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1266, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests, including the Razaghi 638 Entities, or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.       Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1266 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1266 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.       Based on Monthly Invoice No. 1266, Razaghi and Hasan misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $434,944.01, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on September 22, 2017.

g.      The Invoice 1267 Fraud:

i.      Shortly before September 07, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1267 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.      After Monthly Invoice No. 1267 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1269 was reviewed and approved by Razaghi.

iii.      On September 07, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1267 to Sage Memorial by Interstate Email.   Monthly Invoice No. 1267 asked Sage Memorial to pay $338,848.45 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.      Among other items of compensation and expense claimed on Monthly Invoice No. 1267 were Fraudulent Expenses.   Among other Fraudulent Expenses included on Monthly Invoice No. 1267 were items relating to travel on matter that were not for the benefit of Sage Memorial in an amount exceeding $1,200 and almost 500 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.      Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1267, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and

personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1267 in full, including all amounts relating to Fraudulent Expenses.    In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Invoice No. 1267 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1267, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $338,848.45, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on September 29, 2017.

h.    The Invoice 1268 Fraud:

i.    Shortly before September 25, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1268 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1268 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1268 was reviewed and approved by Razaghi and Hasan.

iii.     On September 25, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1268 to Sage Memorial by Interstate Email.    Monthly Invoice No. 1268 asked Sage Memorial to pay $492,841.76 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.     Among other items of compensation and expense claimed on Monthly Invoice No. 1268 were Fraudulent Expenses.    Among other Fraudulent Expenses included on Monthly Invoice No. 1268 were items relating to travel on matters that were not for the benefit of Sage Memorial in an amount exceeding $2,000 and more than 175 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.     Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1268, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.     Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1268 in full, including all amounts relating to Fraudulent Expenses.    In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Invoice No. 1268 and failed to inform Sage

Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1268, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $492,841.76, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on September 29, 2017.

i.    The Invoice 1269 Fraud:

i.    Shortly before September 29, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1269 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1269 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1269 was reviewed and approved by Razaghi.

iii.    On September 29, 2017, Razaghi caused Razaghi Healthcare to transmit Monthly Invoice No. 1269 to Sage Memorial by Interstate Email.    Monthly Invoice No. 1269 asked Sage Memorial to pay $230,549.32 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1269 were Fraudulent Expenses.    Among other Fraudulent Expenses included on Monthly Invoice No. 1269 were items

62

relating to legal fees to a law firm for work on matters unrelated to Sage Memorial in the amount of $9,817.50 and more than 100 hours of time billed for work performed by Razaghi Healthcare on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

        v.     Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1269, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

        vi.     Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1269 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1269 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

        vii.    Based on Monthly Invoice No. 1269, Razaghi's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $230,549.32, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on September 29, 2017.

j.      The Invoice 1270 Fraud:

i.      Shortly before October 20, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1270 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.     After Monthly Invoice No. 1270 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1270 was reviewed and approved by Razaghi.

iii.    On October 20, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1270 to Sage Memorial by Interstate Email.  Monthly Invoice No. 1270 asked Sage Memorial to pay $55,735.75 for services Defendants represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.     Among other items of compensation and expense claimed on Monthly Invoice No. 1270 were Fraudulent Expenses.   Among other Fraudulent Expenses included on Monthly Invoice No. 1270 were items relating to more than 80 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.      Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1270, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.      Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1270 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1270 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.     Based on Monthly Invoice No. 1270, Razaghi's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $55,735.75, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on October 25, 2017.

k.      The Invoice 1271 Fraud:

i.      Shortly before October 16, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1271 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.     After Monthly Invoice No. 1271 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1271 was reviewed and approved by Razaghi.

iii.    On October 16, 2017, Razaghi caused Razaghi Healthcare to transmit Monthly Invoice No. 1271 to Sage Memorial by Interstate Email. Monthly Invoice No. 1271 asked Sage Memorial to pay $68,145.30 for services Razaghi represented Razaghi Healthcare NV had provided to Sage

65

Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1271 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1271 were items relating to more than 225 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.    Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1271, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1271 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1271 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1271, Razaghi's misrepresentations and material omissions, and their complete control over

the administration of Sage Memorial, the sum of $68,145.30, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on October 25, 2017.

l.     The Invoice 1273 Fraud:

i.     Shortly before October 20, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1273 and to seek from Sage Memorial payment and reimbursement for the fraudulent expenses described below.

ii.     After Monthly Invoice No. 1273 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Invoice No. 1261 was reviewed and approved by Razaghi.

iii.     October 20, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1273 to Sage Memorial by Interstate Email. Monthly Invoice No. 1273 asked Sage Memorial to pay $107,228.30 for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing services to Sage Memorial.

iv.     Among other items of compensation and expense claimed on Monthly Invoice No. 1273 were Fraudulent Expenses.   Among other Fraudulent Expenses included on Monthly Invoice No. 1273 were items relating to work performed by a law firm on legal matters for the benefit of Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work in the amount of $1,334.06.

v.     Razaghi  knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1273, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and

personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.     Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1273 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice 1273 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.     Based on Monthly Invoice No. 1273, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $107,228.30, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on October 25, 2017.

m.     The Invoice 1274 Fraud:

i.     Shortly before October 16, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1274 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.     After Monthly Invoice No. 1274 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1269 was reviewed and approved by Razaghi.

iii.     On or shortly after October 16, 2017, Razaghi caused Razaghi Healthcare to transmit Monthly Invoice No. 1274 to Sage Memorial by

email.  Monthly Invoice No. 1274 asked Sage Memorial to pay $58,646.39 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1274 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1274 were items relating to more than 50 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.    Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1274, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1274 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1274 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1274, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $58,646.39, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on November 13, 2017.

n.    The Invoice 1275 Fraud:

i.    Shortly before November 1, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1275 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1275 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1275 was reviewed and approved by Razaghi.

iii.    On or shortly after November 1, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1275 to Sage Memorial by Interstate Email.  Monthly Invoice No. 1275 asked Sage Memorial to pay $57,383.95 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1275 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1275 were items relating to more than 140 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that

was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.      Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1275, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.      Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1275 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1275 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.      Based on Monthly Invoice No. 1275, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $57,383.95, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on November 13, 2017.

o.      The Invoice 1277 Fraud:

i.      Shortly before September 29, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No.

71

1277 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.     After Monthly Invoice No. 1277 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 127 was reviewed and approved by Razaghi.

iii.     On or shortly after November 1, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1277 to Sage Memorial by Interstate mail.   Monthly Invoice No. 1277 asked Sage Memorial to pay $171,471.05 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.     Among other items of compensation and expense claimed on Monthly Invoice No. 1277 were Fraudulent Expenses.   Among other Fraudulent Expenses included on Monthly Invoice No. 1277 were items relating to payment of fees owing to an architect performing services in connection with land that would be owned and developed by Razaghi, Razaghi Healthcare NV, or their affiliates for their own business and personal purposes, in the amount of $79,002.97.

v.     Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1277, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.     Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay

72

Monthly Invoice No. 1277 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1277 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1277, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $171,471.05, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on November 13, 2017.

p.    The Invoice 1278 Fraud:

i.    Shortly before November 20, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1278 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1278 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1278 was reviewed and approved by Razaghi.

iii.    On or shortly after November 20, 2017, Razaghi caused Razaghi Healthcare to transmit Monthly Invoice No. 1278 to Sage Memorial by Interstate Email. Monthly Invoice No. 1278 asked Sage Memorial to pay $56,778.16 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1278 were Fraudulent Expenses.    Among other Fraudulent Expenses included on Monthly Invoice No. 1278 were items relating to more than 70 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.    Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1278, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1278 in full, including all amounts relating to Fraudulent Expenses.    In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1278 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1278, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $56,778.16, including amounts relating to Fraudulent Expenses, was transferred from a Sage

Memorial account and deposited into a Razaghi Healthcare NV bank account on November 21, 2017.

q.      The Invoice 1279 Fraud:

i.      Shortly before November 20, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1279 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.      After Monthly Invoice No. 1279 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1279 was reviewed and approved by Razaghi.

iii.      On or shortly after November 20, 2017, Razaghi caused Razaghi Healthcare to transmit Monthly Invoice No. 1279 to Sage Memorial by Interstate Email. Monthly Invoice No. 1279 asked Sage Memorial to pay $64,570.14 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.      Among other items of compensation and expense claimed on Monthly Invoice No. 1279 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1279 were items relating more than 140 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.      Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1279, had not been incurred in connection with services Razaghi Healthcare provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal

interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1279 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1279 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1279, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $64,570.14, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on November 21, 2017.

r.    The Invoice 1281 Fraud:

i.    Shortly before November 20, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1281 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1281 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1281 was reviewed and approved by Razaghi.

iii.    On or shortly after November 20, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1281 to Sage

Memorial by email.  Monthly Invoice No. 1281 asked Sage Memorial to pay $69,422.64 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1281 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1281 were items relating to legal fees to a law firm for work on matters for Razaghi's personal or business interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial, in the amount of $9,817.50.

v.    Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1281, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1281 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1281 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.     Based on Monthly Invoice No. 1281, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $69,422.64, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on November 21, 2017.

s.     The Invoice 1303 Fraud:

i.     Shortly before February 14, 2018, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1303 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.     After Monthly Invoice No. 1303 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1303 was reviewed and approved by Razaghi and Hasan.

iii.     On or shortly after February 14, 2018, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1303 to Sage Memorial by Interstate email. Monthly Invoice 1303 asked Sage Memorial to pay $52,990.36 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.     Among other items of compensation and expense claimed on Monthly Invoice No. 1303 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice 1303 were items relating to travel expenses in the amount of more than $2,500 and more than 250 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's and Hasan's unrelated business and personal

interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1303, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1303 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice 1303 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1303, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $52,990.36, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on February 27, 2017.

t.    The Invoice 1308 Fraud:

i.      Shortly before February 26, 2018, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1308 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.     After Monthly Invoice No. 1308 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1308 was reviewed and approved by Razaghi and Hasan.

iii.    On or shortly after February 26, 2018, Razaghi and Hasan caused Razaghi Healthcare to transmit Monthly Invoice No. 1308 to Sage Memorial by Interstate Email.  Monthly Invoice No. 1308 asked Sage Memorial to pay $51,824.12 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.     Among other items of compensation and expense claimed on Monthly Invoice No. 1308 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1308 were items relating to fees in the amount of $12,500 for a consulting firm for work performed on behalf of Razaghi, Razaghi Healthcare, or their affiliates in connection with Defendants' unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.      Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1308, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's

own separate business and personal interests or for work Razaghi Healthcare was not otherwise entitled to compensation or reimbursement.

vi.     Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1308 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1308 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.     Based on Monthly Invoice No. 1308, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $51,824.12, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on February 27, 2017.

u.     The Invoice 1336 Fraud:

i.     Shortly before May 25, 2018, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1336 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.     After Monthly Invoice No. 1336 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1336 was reviewed and approved by Razaghi and Hasan.

iii.    On or shortly after May 25, 2018, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1336 to Sage Memorial by Interstate Email.  Monthly Invoice No. 1336 asked Sage Memorial to pay $164,609.35 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1336 were Fraudulent Expenses.  Among the Fraudulent Expenses included on Monthly Invoice No. 1336 were items relating to fees in the amount of $153,515.47 for a consulting firm for work performed on behalf of Razaghi Healthcare, Razaghi, and Hasan, or their affiliates, in connection with Razaghi's and Hasan's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1336, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1336 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1336 and failed to inform Sage Memorial that the true purpose of those Fraudulent

Expenses was to fund Defendants' business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.     Based on Monthly Invoice No. 1336, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $164,609.35, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on June 1, 2018.

v.     <u>The Invoice 1345 Fraud</u>:

i.     Shortly before June 22, 2018, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1345 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.     After Monthly Invoice No. 1345 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1345 was reviewed and approved by Razaghi and Hasan.

iii.     On or shortly after June 22, 2018, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1345 to Sage Memorial by Interstate Email.  Monthly Invoice No. 1345 asked Sage Memorial to pay $184,829.24 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.     Among other items of compensation and expense claimed on Monthly Invoice No. 1345 were Fraudulent Expenses.   Among other

Fraudulent Expenses included on Monthly Invoice No. 1345 were items relating to fees in the amount of $76,843.18 for a consulting firm for work performed on behalf of Razaghi Healthcare, Razaghi, and Hasan, or their affiliates, in connection with Razaghi's and Hasan's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1345, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1345 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1345 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Defendants' business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1345, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $184,829.24, including amounts relating to Fraudulent Expenses, was transferred from a Sage

Memorial account and deposited into a Razaghi Healthcare NV bank account.

w.    The Invoice 1354 Fraud:

i.    Shortly before July 19, 2018, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1354 and to seek payment and reimbursement for the fraudulent expenses described below.

ii.    After Monthly Invoice No. 1354 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1354 was reviewed and approved by Razaghi and Hasan.

iii.    On or shortly after July 19, 2018, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1354 to Sage Memorial by Interstate Email.  Monthly Invoice No. 1354 asked Sage Memorial to pay $32,775.89 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

iv.    Among other items of compensation and expense claimed on Monthly Invoice No. 1354 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1354 were items relating to fees in the amount of $2,014.10 for a consulting firm for work performed on behalf of Razaghi Healthcare, Razaghi, and Hasan, or their affiliates, in connection with Razaghi's and Hasan's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

v.    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1354, had not been incurred in

connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare was not otherwise entitled to compensation or reimbursement.

vi.    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1354 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1354 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Defendants' business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

vii.    Based on Monthly Invoice No. 1354, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $32,775.89, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account.

x.    The Razaghi Compensation Frauds

i.    Shortly before each of the dates set forth for each invoice in the Razaghi Compensation Fraud Table, the identified Defendants caused Razaghi Healthcare NV employees to assemble and prepare the Monthly Invoices identified in the Table and to seek payment for the fraudulent

compensation relating to Razaghi's billed time as described in each invoice listed in the Razaghi Compensation Fraud Table.

ii.    After each invoice in the Compensation Fraud Table was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, it was reviewed and approved by the defendant identified in the Table.

iii.    On or shortly after the date of each invoice in the Razaghi Compensation Fraud Table, the identified Defendant caused Razaghi Healthcare NV to transmit each invoice to Sage Memorial by Interstate Email.  Each invoice asked Sage Memorial to pay the amount set forth in the Razaghi Compensation Fraud Table for time Razaghi billed to Sage Memorial.  The identified Defendant represented to Sage Memorial that Razaghi Healthcare NV was billing the correct hourly rate for Razaghi's time.

iv.    On the date of each invoice in the Razaghi Compensation Fraud Table, the applicable CEO Services Contract provided that the Sage Board and Razaghi Healthcare NV contractually agreed that Razaghi Healthcare NV would charge $175 per hour for professional time Razaghi rendered to Sage Memorial.  In violation of the terms of the applicable CEO Services Contract, for each invoice listed in the Razaghi Compensation Fraud Table, the identified Defendant intentionally and fraudulently caused Razaghi Healthcare NV to bill Sage Memorial $530 per hour with a $35 per hour discount for a net billable amount of $495 per hour instead of $175 per hour, as represented to the Sage Board in each applicable CEO contract.

v.    The applicable Defendant identified in the Razaghi Fraud Compensation Table was able to conceal the fact that Razaghi's time was being billed at a net $495 per hour instead of $175 per hour because identified Defendant controlled the people at Razaghi Healthcare NV who

87

prepared and transmitted to Sage Memorial each invoice, controlled the people at Sage Memorial who received and reviewed each invoice listed in the Razaghi Compensation Fraud Table, and controlled the people at Sage Memorial who approved and paid each invoice. As a consequence of the complete control over Sage Memorial, no one involved in reviewing, approving, and paying the invoices listed in the Razaghi Compensation Fraud Table was independent and in a position to know of the fraud or to disclose the fraud to the Sage Board.

vi.     As a result, for each invoice listed in the Razaghi Compensation Fraud Table, the identified Defendant intentionally and fraudulently billed Sage Memorial an hourly rate for Razaghi's time that was almost three time the contractually agreed hourly rate. The identified Defendant knew that the invoices contained false compensation claims for Razaghi's time and that Razaghi Healthcare NV was not entitled to payment for the amounts billed invoice for Razaghi's time.

vii.     The identified Defendant, by virtue of his, or their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying invoices, caused Sage Memorial to pay each invoice in the Razaghi Compensation Fraud Table in full, including all amounts relating to false compensation claims for Razaghi's time. In doing so, the identified Defendant failed to disclose his, or their, inclusion of false compensation claims for Razaghi's time on the invoices and failed to inform Sage Memorial that the true purpose of those false compensation claims was to enrich Razaghi Healthcare NV, Razaghi, and to expand the Enterprise through a pattern of racketeering activity.

viii.     Based on each invoice in the Razaghi Compensation Fraud Table, the identified Defendant's misrepresentations and material omissions, and his, or their, complete control over the administration of

Sage Memorial, the sums set forth for each invoice, which included the fraudulent billing for Razaghi's time, as well as other amounts identified on each, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on a date shortly after the invoice was transmitted to Sage Memorial.

y.    The Razaghi Compensation Fraud Table

| Date | Razaghi Hourly Compensation billed at $495 per hour | Defendant |
|---|---|---|
| 5/20/2015 | $30,690.00 | Razaghi |
| 6/2/2015 | $34,650.00 | Razaghi |
| 6/16/2015 | $39,600.00 | Razaghi |
| 6/30/2015 | $31,680.00 | Razaghi |
| 7/15/2015 | $9,900.00 | Razaghi |
| 7/29/2015 | $13,365.00 | Razaghi |
| 8/11/2015 | $30,318.75 | Razaghi |
| 8/25/2015 | $38,981.25 | Razaghi |
| 9/8/2015 | $32,917.50 | Razaghi |
| 9/23/2015 | $30,318.75 | Razaghi |
| 10/7/2015 | $47,272.50 | Razaghi, Hasan |
| 11/16/2015 | $37,743.75 | Razaghi, Hasan |
| 12/1/2015 | $62,617.50 | Razaghi, Hasan |
| 1/11/2016 | $35,245.00 | Razaghi, Hasan |
| 2/22/2016 | $60,588.00 | Razaghi, Hasan |
| 3/7/2016 | $75,982.50 | Razaghi, Hasan |
| 5/16/2016 | $54,573.55 | Razaghi, Hasan |
| 5/31/2016 | $55,316.25 | Razaghi, Hasan |
| 7/25/2016 | $23,512.50 | Razaghi, Hasan |
| 8/22/2016 | $41,827.50 | Razaghi, Hasan |
| 9/6/2016 | $ 21,532.50 | Razaghi, Hasan |
| 9/19/2016 | $30,442.50 | Razaghi, Hasan |
| 10/4/2016 | $16,335.00 | Razaghi, Hasan |
| 10/18/2016 | $40,713.75 | Razaghi, Hasan |
| 1/23/2017 | $ 43,065.00 | Razaghi, Hasan |
| 2/6/2017 | $22,151.25 | Razaghi, Hasan |
| 2/21/2017 | $25,863.75 | Razaghi, Hasan |
| 3/6/2017 | $22,770.00 | Razaghi, Hasan |
| 3/20/2017 | $13,365.00 | Razaghi, Hasan |

| Date | Razaghi Hourly Compensation billed at $495 per hour | Defendant |
|---|---|---|
| 4/18/2017 | $83,655.00 | Razaghi, Hasan |
| 5/1/2017 | $14,378.50 | Razaghi, Hasan |
| 5/17/2017 | $40,095.00 | Razaghi, Hasan |
| 6/1/2017 | $17,325.00 | Razaghi, Hasan |
| 6/29/2017 | $79,942.50 | Razaghi, Hasan |
| 7/13/2017 | $41,332.50 | Razaghi, Hasan |
| 8/9/2017 | $49,995.00 | Razaghi, Hasan |
| 8/11/2017 | $18,562.50 | Razaghi, Hasan |
| 8/24/2017 | $38,610.00 | Razaghi, Hasan |
| 9/7/2017 | $32,917.50 | Razaghi |
| 9/25/2017 | $24,750.00 | Razaghi |
| 9/29/2017 | $19,305.00 | Razaghi |
| 10/20/2017 | $ 26,482.50 | Razaghi |
| 11/1/2017 | $32,422.50 | Razaghi |
| 11/20/2017 | $26,482.50 | Razaghi |
| 11/28/2017 | $27,720.00 | Razaghi |
| 12/12/2017 | $28,338.75 | Razaghi |
| 1/3/2018 | $36,877.50 | Razaghi, Hasan |
| 2/14/2018 | $24,255.00 | Razaghi, Hasan |
| 2/14/2018 | $36,011.25 | Razaghi, Hasan |
| 2/22/2018 | $35,516.25 | Razaghi, Hasan |
| 3/5/2018 | $43,931.25 | Razaghi, Hasan |
| 3/21/2018 | $30,813.75 | Razaghi, Hasan |
| 4/2/2018 | $18,686.25 | Razaghi, Hasan |
| 5/14/2018 | $32,670.00 | Razaghi, Hasan |
| 5/29/2018 | $24,502.50 | Razaghi, Hasan |
| 6/11/2018 | $29,452.50 | Razaghi, Hasan |
| 6/25/2018 | $31,061.25 | Razaghi, Hasan |
| 7/10/2018 | $27,967.50 | Razaghi, Hasan |
| 7/30/2018 | $36,258.75 | Razaghi, Hasan |
| 8/6/2018 | $63,855.00 | Razaghi, Hasan |
| 8/20/2018 | $35,145.00 | Razaghi, Hasan |
| 8/23/2018 | $74,745.00 | Razaghi, Hasan |
| | $2,207,402.55 | |

**Mailings and Wirings Related and in Furtherance of the Scheme to Defraud Plaintiff of the Illegally Imposed Termination Fee**

179.    Beginning in about July 11, 2018, and continuing through August 26, 2018, Defendants caused the following mailings and wirings in furtherance of the scheme to defraud Plaintiffs of $10.8 million resulting from an illegally imposed "termination fee."

a.    On July 11, 2018, Nicole Hardy, an accounts specialist in the finance department of Sage Memorial received an email request from Razaghi conveyed through Tom Matenaer, the hospital's Controller, to produce a "cost report" (billing rates v. discount rates) for the period 2014 through 2017.

b.    On July 16, 2018, Hardy completed the cost report spreadsheet and emailed it to Matenaer and Sage Memorial's staff accountant, Mary Arave.

c.    On July 20, 2018, without any prior notice, Razaghi circulated an email informing staff that CEM and Dalgai were to be "re-assigned and would be removed" from their positions at Sage.  Later that same day, Sage Board member Ray Ann Terry circulated an email to Sage Board members to request a special meeting to discuss issues/concerns with respect to the Razaghi Healthcare NV contract and reassignment of CEM.

d.    On July 23, 2018, the Sage Board held a special meeting and discussed retaining independent counsel to review and advise them on Razaghi Healthcare NV management contract.  The Sage Board concluded that this independent counsel should not be someone contracted through Razaghi, as he had done with Hoffman.  Razaghi strongly objected to this decision and, via email, requested a copy of "the current Sage bylaws and conflict of interest policy."

e.    By letter dated August 2, 2018 (mailed and emailed that same day), counsel for Razaghi Healthcare NV and Razaghi (Christopher Stachowiak) wrote to Board Chair Wauneka (who had only days earlier met one-on-one with Razaghi and was on friendly terms with him) notifying him of "prospective breaches and/or interference" with the management contract with Sage.

91

f.      On August 13, 2018, Wauneka sent an email to Davis and two other Sage Board members, with Razaghi copied on the email, in which he stated "I believe we are at a point in time where the question is whether the Board wants to continue its relation with Razaghi Development Company, LLC."

g.      On or about August 27, 2018, Razaghi defrauded Sage Memorial of $10.8 million and caused the following wirings/mailings:

> Sage Memorial employee Hardy notified Hasan via e-mail that she had completed uploading invoice #1369 in Sage Memorial's payment system, as directed by Hasan. This was in response to the fact that Defendants Razaghi and Hasan had, that same day, made representations to Hardy when they electronically submitted written invoice #1369 to Sage Memorial's accounting department and Hasan verbally directed Hardy (an accounting clerk) during a telephone conversation to pay the invoice in the amount of $10,855,134.15. The invoice presented a material fact: that Sage owed Razaghi and Razaghi Healthcare NV $10,855,134.15. At the time the invoice was submitted, both Razaghi and Hasan knew this statement was not true because the very contract they were relying upon (the second amended contract) and cited in the invoice permitted Sage a 30-day curative period. Indeed, recognizing this fact, Hasan expressed urgency to Hardy that the invoice be paid and he manipulated Sage's accounts, by virtue of his position as CFO, to ensure there would be sufficient money in the general operating account to pay the $10,855,134.15. All of this was accomplished by Hasan within 90 minutes. As Hardy's supervisor, notwithstanding that he was merely a contract CFO, Hasan knew that she would act upon his request given the imbalance in their respective positions – she was a clerk and he was the CFO. When Hardy received the invoice, she was ignorant of its falsity and assumed Hasan was telling her the truth given his position as CFO. When he verbally directed her via a telephone conversation to process the $10,855,134.15 she believed she was required to follow his directive.

> Hasan, a few minutes later, accessed Sage Memorial's online banking portal system and transferred $500,000.00 from the hospital's IHS Funding Account and $10,855,000.00 from Sage's Third-Party Revenue Account to Sage's General Operating Account to cover the $10.8 million invoice.

> Hasan, as contract CFO, approved $10.8 million payment to Razaghi Healthcare NV. Razaghi Healthcare NV is immediately paid by "automated clearing house" or ACH payment instantly and the funds are taken from Sage Memorial's General Operating Account at Wells Fargo.

92

h.     On or about August 29, 2018, after receiving $10.8 million from Sage Memorial's bank account, Razaghi emailed a letter to the Sage Board expressing his "concerns over the state of the Board of Directors" and "an invalid purported agreement with a Michigan attorney."

i.     On or about September 1, 2018, Razaghi Healthcare NV attorney Stachowiak mailed a letter to Sage notifying it of the termination of the second amended CEO services contract.

j.     On or about September 4, 2018, Razaghi Healthcare NV attorney Stachowiak mailed a second letter to the Sage Board's containing misrepresentations regarding the Razaghi Healthcare NV termination.

k.     On or about November 5, 2018, Razaghi Healthcare NV project manager Abigail Paul sent an e-mail to Sage Controller Tom Matenaer, with an attached letter, requesting a follow up meeting.  Presumably, this was a mere pretense for Razaghi to justify claiming entitlement to even more money.

l.     As detailed earlier in this FAC, Defendant Razaghi caused the interstate wiring of more than 9 separate invoices for services not rendered to Sage Memorial.

180.    In furtherance of the scheme to defraud, and with the purpose of executing their schemes, Defendants herein, caused the payment of monies (in the form of excessive "honorariums") to Sage's Chairman of the Board, Stenson Wauneka.  While this is not a RICO predicate activity itself, it is further evidence of Defendants' knowledge and participation of the scheme to defraud Plaintiff.

**F.     The Attempt to Defraud Plaintiff After August 2018 Through E-mails For Fictitious Services**

181.    From September 11, 2018 through the present, Razaghi used the interstate wires to email invoices to Sage Memorial demanding payment of over $1.8 million for fictious services.   Indeed, after the filing of the Complaint, Razaghi continued to attempt to defraud Sage Memorial through the emailing of invoices (e.g. invoices 1406 and 1407,

1
2
each dated June 26, 2020).  These invoices constitute predicate acts of attempted wire fraud, all in violation of 18 U.S.C. § 1343.

3

### G.    Pattern of Racketeering Activity

4
5
6
7
8
9
10
11
182.    Sage Memorial alleges that the course of conduct engaged in by the Razaghi and Hasan constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5).  Sage Memorial can show the relatedness prong because the predicate acts have the "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise."  All predicate acts had the same purpose of defrauding Sage Memorial of millions of dollars, all for the personal enrichment of the Razaghi and Hasan and their associates.

12
13
183.    Sage Memorial alleges that the continuity of the pattern of racketeering activity constitutes closed-ended continuity as it occurred over a substantial period of time, *i.e.*, from before May 2015 to the present time.

14
15
16
17
18
19
20
21
22
23
24
25
184.    Sage Memorial alleges that the pattern of racketeering activity is also shown by the threat of continued activity as Razaghi and his associates throughout the years have repeatedly engaged in the same illegal and illicit activities involving Sage Memorial. Thus, engaging in the pattern of racketeering as set forth herein is the regular way Razaghi and his enterprise members regularly conducted the operations of Razaghi Healthcare NV, and the association-in-fact enterprise he created.  Although certain of the players have changed, the Razaghi Medical Management Enterprise has been ongoing since at least 2007, and Razaghi and the other RICO Defendants will continue their illegal activities into the future if not stopped.   For example, Razaghi continued to bill Sage for $1.8 million for "management fees" even after the termination of Razaghi Healthcare NV. Thus, Razaghi and his Enterprise members clearly remain a threat to others and their racketeering activity also meets the open-ended continuity test.

26

94

1

### H.    Injury

2      185.    As a direct and proximate result of the predicate acts carried out by Razaghi

3  and Hasan in furtherance of violating 18 U.S.C. § 1962(c), Sage Memorial has been and

4  is continuing to be injured in its business or property as set forth more fully above.

### COUNT TWO
### FEDERAL CIVIL RICO CONSPIRACY – 18 U.S.C. § 1962(d)
5
### Against Defendants Razaghi and Hasan

6

7      186.    Sage Memorial repeats and incorporates by reference each of the

   allegations set forth in the preceding paragraphs.

8

### A.    The Conspiracy

9

10      187.    Sage Memorial alleges that from before May 1, 2015 and continuing

   thereafter, Razaghi and Hasan conspired to violate section 1962(c), i.e., each Defendant

11  agreed that a conspirator would conduct or participate in the affairs of the Enterprise

12  through a pattern of racketeering, consisting of acts indictable under 18 U.S.C. §§ 1341

13  (Mail Fraud) and 1343 (Wire Fraud), as more fully described in Count One.  Sage

14  Memorial alleges that the conspiratorial objective of that mutual agreement was intended

15  to obtain Sage Memorial's business and property, and that such conspiratorial conduct

16  violates RICO 18 U.S.C. §1962(d).

17      188.    Razaghi and Hasan intended to further the schemes to defraud, which as

18  described in Count One were completed and satisfied by at least one substantive

   individual Defendant.  As demonstrated in detail above, Razaghi and Hasan have engaged
19
   in numerous predicate racketeering acts in furtherance of the conspiracy including
20
   systemic fraudulent practices designed to defraud Sage Memorial of money and other
21
   property interests.
22

23      189.    The nature of the above-described acts, material misrepresentations, and

24  omissions in furtherance of the conspiracy give rise to an inference that Razaghi and

   Hasan not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by
25
   conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing
26
   fraudulent acts have been and are part of an overall pattern of racketeering activity.

190.   The agreement to violate RICO with regard to Razaghi and Hasan is as follows:

a.   Razaghi is the sole owner of Razaghi Healthcare NV and the leader of the association in fact enterprise.  From before May 1, 2015 to the present time, Razaghi has devised schemes through which he has abused his relationship with Sage Memorial to divert millions of dollars of Sage Memorial monies to his benefit.  Razaghi has caused conspirators to engage in multiple acts of mail fraud and wire fraud, to further effectuate the defrauding of Sage Memorial of monies, and has compromised Wauneka, the Chairman of the Sage Board.  Through the causing of multiple racketeering acts and his leadership of the enterprise, Razaghi has conspired to violate section 1962(c), all in violation of section 1962(d).

b.   Hasan was a senior consultant and former employee of Razaghi Healthcare NV who followed the directions of Razaghi to engage in multiple racketeering acts of mail and wire fraud, described above, which are realleged and averred in this Count.  Hasan intended to further the substantive violations of fraud, which were completed, and he adopted the goal of furthering or facilitating the criminal endeavor.  Accordingly, Hasan has conspired to violate section 1962(c), all in violation of section 1962(d).

**B.   The Injury**

191.   As a direct and proximate result of Razaghi's and Hasan's predicate acts in furtherance of violating 18 U.S.C § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), Sage Memorial has been and is continuing to be injured in their business or property as set forth more fully above.

<u>**COUNT THREE**</u>
**(Fraud – All Defendants)**

192.   Plaintiff repeats and incorporates each allegation contained in the preceding paragraphs.

96

193.    Razaghi Healthcare, Razaghi, and Hasan falsely and fraudulently made the material misrepresentations and the material omissions with the intent to induce Sage Memorial to act in the manner alleged in this Fourth Amended Complaint and to deprive Sage Memorial of its money and property.    The false representations and material omissions include, but are not limited to, the matters comprising the Pattern of Racketeering Activity, the Predicate Acts, the First Razaghi Compensation Fraud, the Second Razaghi Compensation Fraud, the Third Razaghi Compensation Fraud, and the Termination Payment Fraud.

194.    Specifically, the false representations and material omissions include the following:

a.    The Invoice Fraud Predicate Acts

i.    The Invoice 1261 Fraud:

(a)    Shortly before June 1, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1261 and to seek from Sage Memorial payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1261 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1261 was reviewed and approved by Razaghi and Hasan.

(c)    On or about June 1, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to transmit Monthly Invoice No. 1261 to Sage Memorial by Interstate Email. Monthly Invoice 1261 asked Sage Memorial to pay $499,617.92 for services that Razaghi and Hasan represented Razaghi Healthcare NV employees had

provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV employees had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1261 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1261 were items relating to Razaghi's personal travel from August 26, 2016 through May 11, 2017 in the amount of $8,586.85; a lobbyist in Washington, DC to advance Razaghi's and Hasan's separate business interests in the amount of $10,491.27; and more than 400 hours of time billed for work performed by Razaghi Healthcare NV employees on matters to develop Hasan's and Razaghi's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1261, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Hasan's and Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly

Invoices, caused Sage Memorial to pay Invoice No. 1261 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Invoice 1261 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)      Based on Monthly Invoice No. 1261, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $499,617.92, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on July 17, 2017.

ii.    The Invoice 1262 Fraud

(a)      Shortly before June 29, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1262 and so that Razaghi Healthcare NV could seek from Sage Memorial payment and reimbursement for the fraudulent expenses described below.

(b)      After Monthly Invoice No. 1262 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice 1262 was reviewed and approved by Razaghi and Hasan.

(c)    On or about June 29, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to transmit Monthly Invoice No. 1262 to Sage Memorial by Interstate Email. Monthly Invoice No. 1262 asked Sage Memorial to pay $654,070.06 for services that Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1262 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice 1262 were items relating to more than 230 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's and Hasan's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1262, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over

the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1262 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1262 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work that Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)      Based on Monthly Invoice No. 1262, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $654,070.06, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on August 3, 2017.

iii.    The Invoice 1263 Fraud

(a)      Shortly before July 13, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1263 and to seek from Sage Memorial payment and reimbursement for the fraudulent expenses described below.

(b)      After Monthly Invoice No. 1263 was prepared, Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1263 was reviewed and approved by Razaghi and Hasan.

(c)    On July 13, 2017, Razaghi and Hasan caused Razaghi Healthcare to transmit Monthly Invoice No. 1263 to Sage Memorial by Interstate Email. Monthly Invoice No. 1263 asked Sage Memorial to pay $445,447.07 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services. Among other items of compensation and expense claimed on Monthly Invoice No. 1263 were Fraudulent Expenses.

(d)    Among other Fraudulent Expenses included on Monthly Invoice No. 1263 were items relating to a lobbyist in Washington, DC to further Razaghi's and Hasan's separate business interests in the amount of $10,000; legal fees for a law firm performing work for Razaghi Healthcare NV in the amount of $10,924.07; and more than 40 hours of time billed for work performed by Razaghi Healthcare NV employees on matters to develop Razaghi's and Hasan's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1263, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work

102

Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1263 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1263 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)    Based on Monthly Invoice No. 1263, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $458,447.07, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on August 10, 2017.

iv.    The Invoice 1264 Fraud:

(a)    Shortly before August 09, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1264 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)     After Monthly Invoice No. 1264 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1264 was reviewed and approved by Razaghi and Hasan.

(c)     On August 09, 2017, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1264 to Sage Memorial by Interstate email. Monthly Invoice No. 1264 asked Sage Memorial to pay $426,850.63 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)     Among other items of compensation and expense claimed on Monthly Invoice No. 1264 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1264 were items relating to a lobbyist in Washington, DC to further Defendants separate business interests in the amount of $10,000; a second lobbyist for work to further Defendants' separate business interests in the amount of $10,000; a law firm performing work for Razaghi Healthcare NV in the amount of $7,237.16; personal travel for Razaghi in the amount of more than $650; and more than 150 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's and Hasan's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1263, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice no. 1264 in full, including all amounts relating to Fraudulent Expenses. In doing so, Defendants failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1264 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)    Based on Monthly Invoice No. 1264, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $426,850.63, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on August 10, 2017.

105

v.    The Invoice 1265 Fraud:

(a)    Shortly before August 11, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1265 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1265 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1265 was reviewed and approved by Razaghi and Hasan.

(c)    On August 11, 2017, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1265 to Sage Memorial by Interstate Email. Monthly Invoice No. 1265 asked Sage Memorial to pay $301,868.39 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1265 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1265 were items relating to a law firm performing work for Razaghi Healthcare NV in the amount of $8,768.50 and more than 65 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's and Hasan's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

106

(e)     Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1265, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)     Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1265 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1265 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)     Based on Monthly Invoice No. 1265, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $301,868.39, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on September 14, 2017.

vi.    <u>The Invoice 1266 Fraud</u>:

(a)    Shortly before August 24, 2017, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1266 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1266 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1266 was reviewed and approved by Razaghi and Hasan.

(c)    On August 24, 2017, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1266 to Sage Memorial by Interstate Email. Monthly Invoice No. 1266 asked Sage Memorial to pay $434,944.01 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1266 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1266 were items relating to more than 80 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's and Hasan's unrelated business and personal interests or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1266, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests, including the Razaghi 638 Entities, or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1266 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Invoice No. 1266 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)    Based on Monthly Invoice No. 1266, Razaghi and Hasan misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $434,944.01, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial

account and deposited into a Razaghi Healthcare NV bank account on September 22, 2017.

vii.   The Invoice 1267 Fraud:

(a)    Shortly before September 07, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1267 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1267 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1269 was reviewed and approved by Razaghi.

(c)    On September 07, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1267 to Sage Memorial by Interstate Email. Monthly Invoice No. 1267 asked Sage Memorial to pay $338,848.45 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1267 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1267 were items relating to travel on matter that were not for the benefit of Sage Memorial in an amount exceeding $1,200 and almost 500 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for

work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)     Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1267, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)     Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1267 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Invoice No. 1267 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)     Based on Monthly Invoice No. 1267, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $338,848.45, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on September 29, 2017.

viii.    <u>The Invoice 1268 Fraud</u>:

(a)    Shortly before September 25, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1268 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1268 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1268 was reviewed and approved by Razaghi and Hasan.

(c)    On September 25, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1268 to Sage Memorial by Interstate Email. Monthly Invoice No. 1268 asked Sage Memorial to pay $492,841.76 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1268 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1268 were items relating to travel on matters that were not for the benefit of Sage Memorial in an amount exceeding $2,000 and more than 175 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)     Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1268, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)     Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Invoice No. 1268 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Invoice No. 1268 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial

(g)     Based on Monthly Invoice No. 1268, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $492,841.76, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on September 29, 2017.

ix.     The Invoice 1269 Fraud:

(a)    Shortly before September 29, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1269 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1269 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1269 was reviewed and approved by Razaghi.

(c)    On September 29, 2017, Razaghi caused Razaghi Healthcare to transmit Monthly Invoice No. 1269 to Sage Memorial by Interstate Email. Monthly Invoice No. 1269 asked Sage Memorial to pay $230,549.32 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1269 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1269 were items relating to legal fees to a law firm for work on matters unrelated to Sage Memorial in the amount of $9,817.50 and more than 100 hours of time billed for work performed by Razaghi Healthcare on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

114

(e)     Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1269, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)     Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1269 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1269 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)     Based on Monthly Invoice No. 1269, Razaghi's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $230,549.32, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on September 29, 2017.

x.    <u>The Invoice1270 Fraud</u>:

(a)    Shortly before October 20, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1270 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1270 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1270 was reviewed and approved by Razaghi.

(c)    On October 20, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1270 to Sage Memorial by Interstate Email. Monthly Invoice No. 1270 asked Sage Memorial to pay $55,735.75 for services Defendants represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1270 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1270 were items relating to more than 80 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1270, had not been

116

incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)     Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1270 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1270 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)     Based on Monthly Invoice No. 1270, Razaghi's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $55,735.75, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on October 25, 2017.

xi.     The Invoice 1271 Fraud:

(a)     Shortly before October 16, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare

117

Monthly Invoice No. 1271 After Monthly Invoice No. 1271 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1271 was reviewed and approved by Razaghi.

(b)        On October 16, 2017, Razaghi caused Razaghi Healthcare to transmit Monthly Invoice No. 1271 to Sage Memorial by Interstate Email. Monthly Invoice No. 1271 asked Sage Memorial to pay $68,145.30 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(c)        Among other items of compensation and expense claimed on Monthly Invoice No. 1271 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1271 were items relating to more than 225 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(d)        Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1271, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(e)    Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1271 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1271 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(f)    Based on Monthly Invoice No. 1271, Razaghi's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $68,145.30, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on October 25, 2017.

xii.    The Invoice 1273 Fraud:

(a)    Shortly before October 20, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1273 and to seek from Sage Memorial payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1273 was prepared by Razaghi Healthcare NV employees, and before it was

119

transmitted to Sage Memorial, Invoice No. 1273 was reviewed and approved by Razaghi.

(c)       October 20, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1273 to Sage Memorial by Interstate Email. Monthly Invoice No. 1273 asked Sage Memorial to pay $107,228.30 for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing services to Sage Memorial.

(d)       Among other items of compensation and expense claimed on Monthly Invoice No. 1273 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1273 were items relating to work performed by a law firm on legal matters for the benefit of Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work in the amount of $1,334.06.

(e)       Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1273, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)       Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1273 in full,

including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1273 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)      Based on Monthly Invoice No. 1273, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $107,228.30, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on October 25, 2017.

xiii.    The Invoice 1274 Fraud:

(a)      Shortly before October 16, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1274 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)      After Monthly Invoice No. 1274 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1274 was reviewed and approved by Razaghi.

(c)      On or shortly after October 16, 2017, Razaghi caused Razaghi Healthcare to transmit Monthly Invoice No. 1274 to Sage Memorial by email. Monthly Invoice No. 1274 asked

Sage Memorial to pay $58,646.39 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1274 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1274 were items relating to more than 50 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1274, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1274 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1274 and

failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)    Based on Monthly Invoice No. 1274, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $58,646.39, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on November 13, 2017.

xiv.    The Invoice 1275 Fraud:

(a)    Shortly before November 1, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1275 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1275 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1275 was reviewed and approved by Razaghi.

(c)    On or shortly after November 1, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1275 to Sage Memorial by Interstate Email. Monthly Invoice No. 1275 asked Sage Memorial to pay $57,383.95 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of

expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1275 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1275 were items relating to more than 140 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1275, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1275 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1275 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would

124

not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)     Based on Monthly Invoice No. 1275, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $57,383.95, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on November 13, 2017.

xv.    The Invoice 1277 Fraud:

(a)     Shortly before September 29, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1277 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)     After Monthly Invoice No. 1277 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1277 was reviewed and approved by Razaghi.

(c)     On or shortly after November 1, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1277 to Sage Memorial by Interstate mail. Monthly Invoice 1277 asked Sage Memorial to pay $171,471.05 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1277 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1277 were items relating to payment of fees owing to an architect performing services in connection with land that would be owned and developed by Razaghi, Razaghi Healthcare NV, or their affiliates for their own business and personal purposes, in the amount of $79,002.97.

(e)    Razaghi knew that the Fraudulent Expenses, and others include on Monthly Invoice No. 1277, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1277 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1277 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were

(g)    Based on Monthly Invoice No. 1277, Razaghi's misrepresentations and material omissions, and his complete

126

control over the administration of Sage Memorial, the sum of $171,471.05, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on November 13, 2017.

xvi.    The Invoice 1278 Fraud:

(a)    Shortly before November 20, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1278 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1278 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1278 was reviewed and approved by Razaghi.

(c)    On or shortly after November 20, 2017, Razaghi caused Razaghi Healthcare to transmit Monthly Invoice No. 1278 to Sage Memorial by Interstate Email. Monthly Invoice No. 1278 asked Sage Memorial to pay $56,778.16 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1278 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1278 were items relating to more than 70 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated

business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1278, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1278 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1278 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)    Based on Monthly Invoice No. 1278, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $56,778.16, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account

and deposited into a Razaghi Healthcare NV bank account on November 21, 2017.

xvii.    The Invoice 1279 Fraud:

(a)    Shortly before November 20, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1279 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1279 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1279 was reviewed and approved by Razaghi.

(c)    On or shortly after November 20, 2017, Razaghi caused Razaghi Healthcare to transmit Monthly Invoice No. 1279 to Sage Memorial by Interstate Email. Monthly Invoice No. 1279 asked Sage Memorial to pay $64,570.14 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1279 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1279 were items relating more than 140 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)      Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1279, had not been incurred in connection with services Razaghi Healthcare provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)      Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1279 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose his inclusion of Fraudulent Expenses on Monthly Invoice No. 1279 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)      Based on Monthly Invoice No. 1279, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $64,570.14, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on November 21, 2017.

xviii.   The Invoice 1281 Fraud:

(a)      Shortly before November 20, 2017, Razaghi caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1281 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)      After Monthly Invoice No. 1281 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1281 was reviewed and approved by Razaghi.

(c)      On or shortly after November 20, 2017, Razaghi caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1281 to Sage Memorial by email. Monthly Invoice 1281 asked Sage Memorial to pay $69,422.64 for services Razaghi represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)      Among other items of compensation and expense claimed on Monthly Invoice No. 1281 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1281 were items relating to legal fees to a law firm for work on matters for Razaghi's personal or business interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial, in the amount of $9,817.50.

(e)      Razaghi knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1281, had not

been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi, by virtue of his complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1281 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice 1281 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)    Based on Monthly Invoice No. 1281, Razaghi's misrepresentations and material omissions, and his complete control over the administration of Sage Memorial, the sum of $69,422.64, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on November 21, 2017.

xix.   The Invoice 1303 Fraud:

(a)      Shortly before February 14, 2018, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1303 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)      After Monthly Invoice No. 1303 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1303 was reviewed and approved by Razaghi and Hasan.

(c)      On or shortly after February 14, 2018, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1303 to Sage Memorial by Interstate email. Monthly Invoice No. 1303 asked Sage Memorial to pay $52,990.36 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)      Among other items of compensation and expense claimed on Monthly Invoice No. 1303 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1303 were items relating to travel expenses in the amount of more than $2,500 and more than 250 hours of time billed for work performed by Razaghi Healthcare NV on matters to develop Razaghi's and Hasan's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not

billable to, or subject to reimbursement from, Sage Memorial.

(e)     Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice 1303, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare NV was not otherwise entitled to compensation or reimbursement.

(f)     Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1303 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1303 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)     Based on Monthly Invoice No. 1303, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $52,990.36, including amounts

relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on February 27, 2017.

xx.    The Invoice 1308 Fraud:

(a)    Shortly before February 26, 2018, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1308 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1308 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1308 was reviewed and approved by Razaghi and Hasan.

(c)    On or shortly after February 26, 2018, Razaghi and Hasan caused Razaghi Healthcare to transmit Monthly Invoice No. 1308 to Sage Memorial by Interstate Email. Monthly Invoice No. 1308 asked Sage Memorial to pay $51,824.12 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1308 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1308 were items relating to fees in the amount of $12,500 for a consulting firm for work performed on behalf of Razaghi, Razaghi Healthcare, or their affiliates in connection with Defendants' unrelated business and

personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)     Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1308, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare was not otherwise entitled to compensation or reimbursement.

(f)     Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1308 in full, including all amounts relating to Fraudulent Expenses. In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1308 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Razaghi's and Hasan's business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)     Based on Monthly Invoice No. 1308, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage

Memorial, the sum of $51,824.12, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on February 27, 2017.

xxi.  The Invoice 1336 Fraud:

(a)    Shortly before May 25, 2018, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1336 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1336 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1336 was reviewed and approved by Razaghi and Hasan.

(c)    On or shortly after May 25, 2018, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1336 to Sage Memorial by Interstate Email. Monthly Invoice No. 1336 asked Sage Memorial to pay $164,609.35 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1336 were Fraudulent Expenses. Among other Fraudulent Expenses included on Monthly Invoice No. 1336 were items relating to fees in the amount of $153,515.47 for a consulting firm for work performed on behalf of Razaghi Healthcare, Razaghi, and

Hasan, or their affiliates, in connection with Razaghi's and Hasan's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1336, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1336 in full, including all amounts relating to Fraudulent Expenses. In doing so Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1336 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Defendants' business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)    Based on Monthly Invoice No. 1336, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $164,609.35, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account.

xxii.    The Invoice 1345 Fraud:

(a)    Shortly before June 22, 2018, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1345 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1345 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1345 was reviewed and approved by Razaghi and Hasan.

(c)    On or shortly after June 22, 2018, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1345 to Sage Memorial by Interstate Email. Monthly Invoice No. 1345 asked Sage Memorial to pay $184,829.24 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

(d)    Among other items of compensation and expense claimed on Monthly Invoice No. 1345 were Fraudulent Expenses. Among other Fraudulent Expenses included on

Monthly Invoice No. 1345 were items relating to fees in the amount of $76,843.18 for a consulting firm for work performed on behalf of Razaghi Healthcare, Razaghi, and Hasan, or their affiliates, in connection with Razaghi's and Hasan's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)    Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1345, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare was not otherwise entitled to compensation or reimbursement.

(f)    Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1345 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1345 and failed to inform Sage Memorial that the true purpose of those Fraudulent Expenses was to fund Defendants' business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise

knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)    Based on Monthly Invoice No. 1345, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $184,829.24, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account.

xxiii.    The Invoice 1354 Fraud:

(a)    Shortly before July 19, 2018, Razaghi and Hasan caused Razaghi Healthcare NV employees to assemble and prepare Monthly Invoice No. 1354 and to seek payment and reimbursement for the fraudulent expenses described below.

(b)    After Monthly Invoice No. 1354 was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, Monthly Invoice No. 1354 was reviewed and approved by Razaghi and Hasan.

(c)    On or shortly after July 19, 2018, Razaghi and Hasan caused Razaghi Healthcare NV to transmit Monthly Invoice No. 1354 to Sage Memorial by Interstate Email.  Monthly Invoice No. 1354 asked Sage Memorial to pay $32,775.89 for services Razaghi and Hasan represented Razaghi Healthcare NV had provided to Sage Memorial and for reimbursement of expenses Razaghi and Hasan represented Razaghi Healthcare NV had incurred in connection with providing those services.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

(d)     Among other items of compensation and expense claimed on Monthly Invoice No. 1354 were Fraudulent Expenses.  Among other Fraudulent Expenses included on Monthly Invoice No. 1354 were items relating to fees in the amount of $2,014.10 for a consulting firm for work performed on behalf of Razaghi Healthcare, Razaghi, and Hasan, or their affiliates, in connection with Razaghi's and Hasan's unrelated business and personal interests, including the Razaghi 638 Entities, or for work that was otherwise not billable to, or subject to reimbursement from, Sage Memorial.

(e)     Razaghi and Hasan knew that the Fraudulent Expenses, and others included on Monthly Invoice No. 1354, had not been incurred in connection with services Razaghi Healthcare NV provided to Sage Memorial, but rather had been incurred to advance Razaghi's and Hasan's own separate business and personal interests or for work Razaghi Healthcare was not otherwise entitled to compensation or reimbursement.

(f)     Razaghi and Hasan, by virtue of their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying Monthly Invoices, caused Sage Memorial to pay Monthly Invoice No. 1354 in full, including all amounts relating to Fraudulent Expenses.  In doing so, Razaghi and Hasan failed to disclose their inclusion of Fraudulent Expenses on Monthly Invoice No. 1354 and failed to inform Sage Memorial that the true purpose of those Fraudulent

Expenses was to fund Defendants' business and personal interests that were unrelated to, and that would not benefit, Sage Memorial or for work Razaghi and Hasan otherwise knew was not billable to, or properly reimbursable by, Sage Memorial.

(g)    Based on Monthly Invoice No. 1354, Razaghi's and Hasan's misrepresentations and material omissions, and their complete control over the administration of Sage Memorial, the sum of $32,775.89, including amounts relating to Fraudulent Expenses, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account.

b.    The Razaghi Compensation Frauds

i.    Razaghi Compensation Fraud Table

| Date | Razaghi Hourly Compensation billed at $495 per hour instead of $175 per hour | Defendant |
|---|---|---|
| 5/20/2015 | $30,690.00 | Razaghi |
| 6/2/2015 | $34,650.00 | Razaghi |
| 6/16/2015 | $39,600.00 | Razaghi |
| 6/30/2015 | $31,680.00 | Razaghi |
| 7/15/2015 | $9,900.00 | Razaghi |
| 7/29/2015 | $13,365.00 | Razaghi |
| 8/11/2015 | $30,318.75 | Razaghi |
| 8/25/2015 | $38,981.25 | Razaghi |
| 9/8/2015 | $32,917.50 | Razaghi |
| 9/23/2015 | $30,318.75 | Razaghi |
| 10/7/2015 | $47,272.50 | Razaghi, Hasan |
| 11/16/2015 | $37,743.75 | Razaghi, Hasan |
| 12/1/2015 | $62,617.50 | Razaghi, Hasan |
| 1/11/2016 | $35,245.00 | Razaghi, Hasan |
| 2/22/2016 | $60,588.00 | Razaghi, Hasan |

| Date | Razaghi Hourly Compensation billed at $495 per hour instead of $175 per hour | Defendant |
| --- | --- | --- |
| 3/7/2016 | $75,982.50 | Razaghi, Hasan |
| 5/16/2016 | $54,573.55 | Razaghi, Hasan |
| 5/31/2016 | $55,316.25 | Razaghi, Hasan |
| 7/25/2016 | $23,512.50 | Razaghi, Hasan |
| 8/22/2016 | $41,827.50 | Razaghi, Hasan |
| 9/6/2016 | $ 21,532.50 | Razaghi, Hasan |
| 9/19/2016 | $30,442.50 | Razaghi, Hasan |
| 10/4/2016 | $16,335.00 | Razaghi, Hasan |
| 10/18/2016 | $40,713.75 | Razaghi, Hasan |
| 1/23/2017 | $ 43,065.00 | Razaghi, Hasan |
| 2/6/2017 | $22,151.25 | Razaghi, Hasan |
| 2/21/2017 | $25,863.75 | Razaghi, Hasan |
| 3/6/2017 | $22,770.00 | Razaghi, Hasan |
| 3/20/2017 | $13,365.00 | Razaghi, Hasan |
| 4/18/2017 | $83,655.00 | Razaghi, Hasan |
| 5/1/2017 | $14,378.50 | Razaghi, Hasan |
| 5/17/2017 | $40,095.00 | Razaghi, Hasan |
| 6/1/2017 | $17,325.00 | Razaghi, Hasan |
| 6/29/2017 | $79,942.50 | Razaghi, Hasan |
| 7/13/2017 | $41,332.50 | Razaghi, Hasan |
| 8/9/2017 | $49,995.00 | Razaghi, Hasan |
| 8/11/2017 | $18,562.50 | Razaghi, Hasan |
| 8/24/2017 | $38,610.00 | Razaghi, Hasan |
| 9/7/2017 | $32,917.50 | Razaghi |
| 9/25/2017 | $24,750.00 | Razaghi |
| 9/29/2017 | $19,305.00 | Razaghi |
| 10/20/2017 | $ 26,482.50 | Razaghi |
| 11/1/2017 | $32,422.50 | Razaghi |
| 11/20/2017 | $26,482.50 | Razaghi |
| 11/28/2017 | $27,720.00 | Razaghi |
| 12/12/2017 | $28,338.75 | Razaghi |
| 1/3/2018 | $36,877.50 | Razaghi, Hasan |
| 2/14/2018 | $24,255.00 | Razaghi, Hasan |
| 2/14/2018 | $36,011.25 | Razaghi, Hasan |
| 2/22/2018 | $35,516.25 | Razaghi, Hasan |
| 3/5/2018 | $43,931.25 | Razaghi, Hasan |
| 3/21/2018 | $30,813.75 | Razaghi, Hasan |
| 4/2/2018 | $18,686.25 | Razaghi, Hasan |

| Date | Razaghi Hourly Compensation billed at $495 per hour instead of $175 per hour | Defendant |
|---|---|---|
| 5/14/2018 | $32,670.00 | Razaghi, Hasan |
| 5/29/2018 | $24,502.50 | Razaghi, Hasan |
| 6/11/2018 | $29,452.50 | Razaghi, Hasan |
| 6/25/2018 | $31,061.25 | Razaghi, Hasan |
| 7/10/2018 | $27,967.50 | Razaghi, Hasan |
| 7/30/2018 | $36,258.75 | Razaghi, Hasan |
| 8/6/2018 | $63,855.00 | Razaghi, Hasan |
| 8/20/2018 | $35,145.00 | Razaghi, Hasan |
| 8/23/2018 | $74,745.00 | Razaghi, Hasan |
| | $2,207,402.55 | |

ii.     Shortly before each of the dates set forth for each invoice in the Razaghi Compensation Fraud Table, set forth above, the identified Defendants caused Razaghi Healthcare NV employees to assemble and prepare the Monthly Invoices identified in the Table and to seek payment for the fraudulent compensation relating to Razaghi's billed time as described in each invoice listed in the Razaghi Compensation Fraud Table.

iii.     After each invoice in the Compensation Fraud Table was prepared by Razaghi Healthcare NV employees, and before it was transmitted to Sage Memorial, it was reviewed and approved by the defendant identified in the Table.

iv.     On or shortly after the date of each invoice in the Razaghi Compensation Fraud Table, the identified Defendant caused Razaghi Healthcare NV to transmit each invoice to Sage Memorial by Interstate Email. Each invoice asked Sage Memorial to pay the amount set forth in the Razaghi Compensation Fraud Table for time Razaghi billed to Sage Memorial. The identified Defendant represented to Sage Memorial that Razaghi Healthcare NV was billing the correct hourly rate for Razaghi's time.  The identified Defendant knew that each representation concerning

145

Razaghi's compensation in each invoice in the Razaghi Compensation Fraud Table was false when each applicable invoice was transmitted to Sage Memorial.

v.     On the date of each invoice in the Razaghi Compensation Fraud Table, the applicable CEO Services Contract provided that the Sage Board and Razaghi Healthcare NV contractually agreed that Razaghi Healthcare NV would charge $175 per hour for professional time Razaghi rendered to Sage Memorial. In violation of the terms of the applicable CEO Services Contract, for each invoice listed in the Razaghi Compensation Fraud Table, the identified Defendant intentionally and fraudulently caused Razaghi Healthcare NV to bill Sage Memorial $530 per hour with a $35 per hour discount for a net billable amount of $495 per hour instead of $175 per hour.

vi.     The applicable Defendant identified in the Razaghi Compensation Fraud Table was able to conceal the fact that Razaghi's time was being billed at a net $495 per hour instead of $175 per hour because identified Defendant controlled the people at Razaghi Healthcare NV who prepared and transmitted to Sage Memorial each invoice, controlled the people at Sage Memorial who received and reviewed each invoice listed in the Razaghi Compensation Fraud Table, and controlled the people at Sage Memorial who approved and paid each invoice. As a consequence of the complete control over Sage Memorial, no one involved in reviewing, approving, and paying the invoices listed in the Razaghi Compensation Fraud Table was independent and in a position to know of the fraud or to disclose the fraud to the Sage Board.

vii.     As a result, for each invoice listed in the Razaghi Compensation Fraud Table, the identified Defendant intentionally and fraudulently billed Sage Memorial an hourly rate for Razaghi's time that

146

was almost three time the contractually agreed hourly rate. The identified Defendant knew that the invoices contained false compensation claims for Razaghi's time and that Razaghi Healthcare NV was not entitled to payment for the amounts billed invoice for Razaghi's time.

viii.    The identified Defendant, by virtue of his, or their complete control over the administration of Sage Memorial and over the process of reviewing, approving, and paying invoices, caused Sage Memorial to pay each invoice in the Razaghi Compensation Fraud Table in full, including all amounts relating to false compensation claims for Razaghi's time. In doing so, the identified Defendant failed to disclose his, or their, inclusion of false compensation claims for Razaghi's time on the invoices and failed to inform Sage Memorial that the true purpose of those false compensation claims was to enrich Razaghi Healthcare NV, Razaghi, and to expand the Enterprise through a pattern of racketeering activity.

ix.    Based on each invoice in the Razaghi Compensation Fraud Table, the identified Defendant's misrepresentations and material omissions, and his, or their, complete control over the administration of Sage Memorial, the sums set forth for each invoice, which included the fraudulent billing for Razaghi's time, as well as other amounts identified on each, was transferred from a Sage Memorial account and deposited into a Razaghi Healthcare NV bank account on a date shortly after the invoice was transmitted to Sage Memorial.

c.    The Termination Payment Fraud

i.    On or about August 27, 2018, Razaghi defrauded Sage Memorial of $10.8 million:

Sage Memorial employee Hardy notified Hasan via e-mail that she had completed uploading invoice #1369 in Sage Memorial's payment system, as directed by Hasan. This was in response to the

147

fact that Defendants Razaghi and Hasan had, that same day, made representations to Hardy when they electronically submitted written invoice #1369 to Sage Memorial's accounting department and Hasan verbally directed Hardy (an accounting clerk) during a telephone conversation to pay the invoice in the amount of $10,855,134.15. The invoice presented a material fact: that Sage owed Razaghi and Razaghi Healthcare NV $10,855,134.15. At the time the invoice was submitted, both Razaghi and Hasan knew this statement was not true because the very contract they were relying upon (the second amended contract) and cited in the invoice permitted Sage a 30-day curative period. Indeed, recognizing this fact, Hasan expressed urgency to Hardy that the invoice be paid and he manipulated Sage's accounts, by virtue of his position as CFO, to ensure there would be sufficient money in the general operating account to pay the $10,855,134.15. All of this was accomplished by Hasan within 90 minutes. As Hardy's supervisor, notwithstanding that he was merely a contract CFO, Hasan knew that she would act upon his request given the imbalance in their respective positions – she was a clerk and he was the CFO. When Hardy received the invoice, she was ignorant of its falsity and assumed Hasan was telling her the truth given his position as CFO. When he verbally directed her via a telephone conversation to process the $10,855,134.15 she believed she was required to follow his directive.

Hasan, a few minutes later, accessed Sage Memorial's online banking portal system and transferred $500,000.00 from the hospital's IHS Funding Account and $10,855,000.00 from Sage's

Third-Party Revenue Account to Sage's General Operating Account to cover the $10.8 million invoice.

Hasan, as contract CFO, approved $10.8 million payment to Razaghi Healthcare NV. Razaghi Healthcare NV is immediately paid by "automated clearing house" or ACH payment instantly and the funds are taken from Sage Memorial's General Operating Account at Wells Fargo.

d.    The Post August 2018 Fictitious Provision of Services by Razaghi

From September 11, 2018 through the present, after his termination of employment, Razaghi used the interstate wires to email invoices to Sage Memorial demanding payment of over $1.8 million for fictious services. Indeed, after the filing of the Original Complaint, Razaghi continued to attempt to defraud Sage Memorial through the emailing of invoices (e.g. invoices 1406 and 1407, each dated June 26, 2020).

195.    The representations and material omissions set forth in Paragraphs 194(a) through 194(d) were false, and Razaghi Healthcare, Razaghi, and Hasan knew such representations and material omissions were false when made.

196.    The representations set forth in Paragraphs 194(a) through 194(d) were material because they had a natural tendency to influence, or were capable of influencing, Sage Memorial to part with its money or property.

197.    Razaghi Healthcare, Razaghi, and Hasan made these false representations and material omissions with the intent to deceive Sage Memorial.

198.    At the time these representations and material omissions were made, and at the time Sage Memorial took the actions alleged in this Fourth Amended Complaint, Sage Memorial believed the representations to be true, and did not know they were false, and did not know the truth concerning the material omissions.

199.    In reliance on these representations and the material omissions, Sage Memorial was induced to act as described in this Fourth Amended Complaint, including

transferring large amounts of money to Razaghi Healthcare.  Had Sage Memorial known the representations were false or had it know the truth concerning the material omissions, it would not have taken such actions.

200.    Sage Memorial's reliance on these representations and material omissions was reasonable and their actions were justified.

201.    As a proximate result of the fraud and deceit perpetrated by Razaghi Healthcare, Razaghi, and Hasan, Sage Memorial has been damaged in an amount exceeding $75,000.

202.    The acts of Razaghi Healthcare, Razaghi, and Hasan were willful, fraudulent, oppressive, and malicious.  Sage Memorial is therefore entitled to an award of punitive damages in an amount exceeding $75,000.

203.    Because of the conduct of Razaghi Healthcare, Razaghi, and Hasan, Sage Memorial has been required to retain the services of attorneys in order to prosecute this action, and is, therefore, entitled to an award of attorneys' fees and costs of suit incurred herein.

## COUNT FOUR
### (Civil Conspiracy and Aiding and Abetting – All Defendants)

204.    Plaintiff repeats and incorporates each allegation contained in the preceding paragraphs.

205.    Razaghi Healthcare, Razaghi, and Hasan conspired together to achieve the purposes of the Enterprise through the Pattern of Racketeering Activity.  Razaghi Healthcare, Razaghi, and Hasan, together with the Non-Party RICO Participants reached a meeting of the minds and agreed concerning the details, objectives, and strategy of the Enterprise, the Pattern of Racketeering Activity, the Predicate Acts, the First Razaghi Compensation Fraud, the Second Razaghi Compensation Fraud, the Third Razaghi Compensation Fraud, and the Termination Payment Fraud.

206.    Each acted in concert with the others and with the RICO Facilitators to devise, implement, and execute the Pattern of Racketeering Activity, the First Razaghi

Compensation Fraud, the Second Razaghi Compensation Fraud, the Third Razaghi Compensation Fraud, and the Termination Payment Fraud.

207.   Razaghi Healthcare, Razaghi, and Hasan actively participated in, aided abetted, ratified, and adopted for his own benefit, the actions of each other and of the RICO Facilitators in furtherance of the conspiracy, the Pattern of Racketeering Activity, the Predicate Acts, the First Razaghi Compensation Fraud, the Second Razaghi Compensation Fraud, the Third Razaghi Compensation Fraud, the Termination Payment Fraud, and the misrepresentations and material omissions set forth in Paragraphs 194(a) through 194(d) of this Fourth Amended Complaint.

208.   As a proximate result of the conspiracy to defraud perpetrated by Razaghi Healthcare, Razaghi, and Hasan, Sage Memorial has been damaged in an amount exceeding $75,000.

209.   The actions taken by Razaghi Healthcare, Razaghi, and Hasan were willful, fraudulent, oppressive, and malicious.  Sage Memorial is, therefore, entitled to an award of punitive damages in an amount exceeding $75,000.

210.   Because of the conduct of Razaghi Healthcare, Razaghi, and Hasan, Sage Memorial has been required to retain the services of attorneys in order to prosecute this action, and is, therefore, entitled to an award of attorneys' fees and costs of suit incurred herein.

## COUNT FIVE
### (Breach of Fiduciary Duty – Razaghi Healthcare NV)

211.   Plaintiff repeats and incorporates each allegation contained in the preceding paragraphs.

212.   Razaghi Healthcare NV was retained by Sage Memorial as its Chief Executive Officer.  Consequently, Razaghi Healthcare NV owed Sage Memorial a duty of loyalty and honesty in all matters relating to Sage Memorial.

213.   Sage Memorial imposed its trust and confidence in Razaghi Healthcare NV and retained it to represent, protect, and promote its interests during the course of its service as the hospital's CEO.

214.    As a result, Razaghi Healthcare NV owed a fiduciary duty to Sage Memorial.

215.    By engaging in the Pattern of Racketeering Activity, the Predicate Acts, the First Razaghi Compensation Fraud, the Second Razaghi Compensation Fraud, the Third Razaghi Compensation Fraud, and the Termination Payment Fraud, the misrepresentations and material omissions set forth in Paragraphs 194(a) through 194(d), and the other misconduct described in the preceding paragraphs, Razaghi Healthcare NV breached its fiduciary duty to Sage Memorial.

216.    As a proximate cause of Razaghi Healthcare NV's breaches of fiduciary duty, Sage Memorial has been damaged in an amount exceeding $75,000.

217.    The actions taken by Razaghi Healthcare NV were willful, fraudulent, oppressive, and malicious.  Sage Memorial is, therefore, entitled to an award of punitive damages in an amount exceeding $75,000.

218.    Because of the conduct of Razaghi Healthcare NV, Sage Memorial has been required to retain the services of attorneys in order to prosecute this action, and is, therefore, entitled to an award of attorneys' fees and costs of suit incurred herein.

## COUNT SIX
### (Breach of Fiduciary Duty – Razaghi)

219.    Plaintiff repeats and incorporates each allegation contained in the preceding paragraphs.

220.    Razaghi Healthcare NV was retained by Sage Memorial as its Chief Executive Officer.  To fulfill its responsibilities and obligations as Sage Memorial's CEO, Razaghi Healthcare NV contractually delegated those duties to Razaghi, and Razaghi accepted the responsibility and duty for performing Razaghi Healthcare NV's role as Sage Memorial's CEO.

221.    Consequently, Razaghi owed Sage Memorial a duty of loyalty and honesty in all matters relating to Sage Memorial.

222.    Sage Memorial imposed its trust and confidence in Razaghi and retained it to represent, protect, and promote its interests during the course of his service as the hospital's CEO.

223.    As a result, Razaghi owed a fiduciary duty to Sage Memorial.

224.    By engaging in the Pattern of Racketeering Activity, the Predicate Acts, the First Razaghi Compensation Fraud, the Second Razaghi Compensation Fraud, the Third Razaghi Compensation Fraud, the Termination Payment Fraud, the misrepresentations and material omissions set forth in Paragraphs 194(a) through 194(d), and the other misconduct described in the preceding paragraphs, Razaghi breached his fiduciary duty to Sage Memorial.

225.    As a proximate cause of Razaghi's breaches of fiduciary duty, Sage Memorial has been damaged in an amount exceeding $75,000.

226.    The actions taken by Razaghi were willful, fraudulent, oppressive, and malicious.  Sage Memorial is, therefore, entitled to an award of punitive damages in an amount exceeding $75,000.

227.    Because of Razaghi's conduct, Sage Memorial has been required to retain the services of attorneys in order to prosecute this action, and is, therefore, entitled to an award of attorneys' fees and costs of suit incurred herein.

## COUNT SEVEN
### (Breach of Fiduciary Duty – Hasan)

228.    Plaintiff repeats and incorporates each allegation contained in the preceding paragraphs.

229.    Hasan acted as, and held himself out to be, Sage Memorial's Chief Financial Officer.  Consequently, Hasan owed Sage Memorial a duty of loyalty and honesty in all matters relating to Sage Memorial.

230.    Sage Memorial imposed its trust and confidence in Hasan and entrusted him to represent, protect, and promote its interests during the course of his service as the hospital's CFO.

231.    As a result, Hasan owed a fiduciary duty to Sage Memorial.

232.    By engaging in the Pattern of Racketeering Activity the Predicate Acts, the First Razaghi Compensation Fraud, the Second Razaghi Compensation Fraud, the Third Razaghi Compensation Fraud, the Termination Payment Fraud, the misrepresentations and material omissions set forth in Paragraphs 194(a) through 194(d), and the other misconduct described in the preceding paragraphs, Hasan breached his fiduciary duty to Sage Memorial.

233.    As a proximate cause of Hasan's breaches of fiduciary duty, Sage Memorial has been damaged in an amount exceeding $75,000.

234.    The actions taken by Hasan were willful, fraudulent, oppressive, and malicious.  Sage Memorial is, therefore, entitled to an award of punitive damages in an amount exceeding $75,000.

235.    Because of Hasan's conduct, Sage Memorial has been required to retain the services of attorneys in order to prosecute this action, and is, therefore, entitled to an award of attorneys' fees and costs of suit incurred herein.

## COUNT EIGHT
### (Breach of the Covenant of Good Faith and Fair Dealing – Razaghi Healthcare NV)

236.    Plaintiff repeats and incorporates each allegation contained in the preceding paragraphs.

237.    Every contract in Arizona imposes on the contracting parties a duty of good faith and fair dealing that requires the parties to perform in accordance with the intention and spirit of the contract.

238.    Such a duty is implied in the CEO Services Contract (as amended), which was a contract between Sage Memorial and Razaghi Healthcare NV.

239.    Razaghi Healthcare NV breached the covenant of good faith and fair dealing through the actions and omissions alleged herein, including, inter alia: taking from Sage Memorial and/or causing Sage Memorial to pay to Razaghi Healthcare NV a

Termination Payment when one was not due under the CEO Services Contract; and abusing its authority and discretion under the CEO Services Contract.

240. Additionally, in the event Razaghi Healthcare NV is found to have complied with either Paragraphs 5(D)(1) and (2) of the First CEO Services Contract or Paragraphs 5(D)(1) and (2) of the Second CEO Services Contract, then in the alternative, Razaghi Healthcare NV deliberately and tortiously contravened the intention and spirit of the contracts by failing to obtain the approval of the Sage Board to increase Razaghi's billing rate from $175 per hour to a net rate of $495 per hour.

241. Razaghi Healthcare NV has therefore materially breached its duty of good faith and fair dealing arising out of both Paragraphs 5(D)(1) and (2) of the First CEO Services Contract and Paragraphs 5(D)(1) and (2) of the Second CEO Services Contract.

242. As a result of Razaghi Healthcare NV billing Razaghi's time at a net rate of $495 per hour without approval from the Sage Board, Sage Memorial has been damaged in an amount exceeding $75,000.

243. As a result of Razaghi Healthcare NV obtaining a Termination Payment that it was not entitled to, Sage Memorial has been damaged in an amount exceeding $75,000.

244. Because of Razaghi's and Razaghi Healthcare's conduct, Sage Memorial has been required to retain the services of attorneys in order to prosecute this action, and, therefore, is entitled to an award of reasonable attorneys' fees and cost of suit incurred herein.

**COUNT NINE**
**(Constructive Fraud – All Defendants)**

245. Plaintiff repeats and incorporates each allegation contained in the preceding paragraphs.

246. Razaghi Healthcare was retained by Sage Memorial as its Chief Executive Officer.

247.   To fulfill its responsibilities and obligations as Sage Memorial's CEO, Razaghi Healthcare contractually delegated those duties to Razaghi, and Razaghi accepted the responsibility and duty for performing Razaghi Healthcare's role as Sage Memorial's CEO.

248.   Hasan acted as, and held himself out to be, Sage Memorial's Chief Financial Officer.

249.   Consequently, Razaghi Healthcare, Razaghi, and Hasan each owed Sage Memorial duties of loyalty and honesty in all matters relating to Sage Memorial.

250.   Sage Memorial imposed its trust and confidence in Razaghi Healthcare, Razaghi, and Hasan and entrusted them to represent, protect, and promote its interests during the course of their service to the hospital.   Through the representations and material omissions described in this Fourth Amended Complaint, Razaghi Healthcare, Razaghi, and Hasan induced Sage Memorial to rely on, and trust, them.

251.   As a result, Razaghi Healthcare, Razaghi, and Hasan each owed fiduciary duties to Sage Memorial.

252.   By engaging in the Pattern of Racketeering Activity, the Predicate Acts, the First Razaghi Compensation Fraud, the Second Razaghi Compensation Fraud, the Third Razaghi Compensation Fraud, the Termination Payment Fraud, the misrepresentations and material omissions set forth in Paragraphs 194(a) through 194(d), and the other misconduct described in this Fourth Amended Complaint, Razaghi Healthcare, Razaghi, and Hasan breached their fiduciary duties to Sage Memorial.

253.   Sage Memorial's reliance on Razaghi Healthcare, Razaghi, and Hasan to protect its interests was reasonable and the actions it took in reliance on them were justified.

254.   As a proximate result of the constructive fraud perpetrated by Razaghi Healthcare, Razaghi, and Hasan, Sage Memorial has been damaged in an amount exceeding $75,000.

255.    The acts of Razaghi Healthcare, Razaghi, and Hasan were willful, fraudulent, oppressive, and malicious.  Sage Memorial is therefore entitled to an award of punitive damages in an amount exceeding $75,000.

256.    Because of the conduct of Razaghi Healthcare, Razaghi, and Hasan, Sage Memorial has been required to retain the services of attorneys in order to prosecute this action, and is, therefore, entitled to an award of attorneys' fees and costs of suit incurred herein.

### COUNT TEN
### (Unjust Enrichment – All Defendants)

257.    Plaintiff repeats and incorporates each allegation contained in the preceding paragraphs.

258.    As a result of their conduct, Razaghi Healthcare, Razaghi, and Hasan have obtained the use and benefits of Sage Memorial's money, resources, and other property, as described in the preceding paragraphs of this Fourth Amended Complaint, through their Racketeering Activity.  Razaghi Healthcare, Razaghi, and Hasan were not entitled to the use and Sage Memorial's money, resources, or other property obtained through their Racketeering Activity, the First Razaghi Compensation Fraud, the Second Razaghi Compensation Fraud, the Third Razaghi Compensation Fraud, and the Termination Payment Fraud.

259.    Despite knowing they were not entitled to such benefits and uses, Razaghi Healthcare, Razaghi, and Hasan have failed and refused to return the money and property to Sage Memorial or to compensate them for the losses incurred as a result of their conduct.

260.    Unless Razaghi Healthcare, Razaghi, and Hasan either return to Sage Memorial the money and property acquired as a result of their Racketeering Activity, the First Razaghi Compensation Fraud, the Second Razaghi Compensation Fraud, the Third Razaghi Compensation Fraud, and the Termination Payment Fraud Razaghi Healthcare, Razaghi, and Hasan will be unjustly enriched to the detriment of Sage Memorial.

261.     As a result of the conduct of Razaghi Healthcare, Razaghi, and Hasan, Sage Memorial has been damaged in an amount exceeding $75,000.

262.     Because of the conduct of Razaghi Healthcare, Razaghi, and Hasan, Sage Memorial has been required to retain the services of attorneys in order to prosecute this action, and is, therefore, entitled to an award of attorneys' fees and costs of suit incurred herein.

## COUNT ELEVEN
### (Breach of Contract – Termination Payment Not Due -- Razaghi Healthcare NV)

263.     Plaintiff repeats and incorporates each allegation contained in the preceding paragraphs.

264.     The CEO Services Contract, as amended, was a contract between Sage Memorial and Razaghi Healthcare NV.

265.     The CEO Services Contract, as amended, provided for a Termination Payment to be paid to Razaghi Healthcare NV in the event that the contract was terminated for certain specified reasons.

266.     The CEO Services Contract was terminated for reasons that did *not* give rise to a Termination Payment being owed to Razaghi Healthcare NV.

267.     Notwithstanding that fact, Razaghi Healthcare NV took from Sage Memorial and/or caused Sage Memorial to pay a Termination Payment. This breached the contract.

268.     As a result of Razaghi Healthcare's breach of the CEO Services Contract (as amended), Sage Memorial has been damaged in an amount exceeding $75,000.

269.     Because of Razaghi's and Razaghi Healthcare's conduct, Sage Memorial has been required to retain the services of attorneys in order to prosecute this action, and, therefore, is entitled to an award of reasonable attorneys' fees and cost of suit incurred herein.

## DEMAND FOR JURY TRIAL

270.     Sage Memorial requests that all triable issues be determined by a jury.

158

**RELIEF REQUESTED**

271.    Wherefore, in light of the foregoing, Sage Memorial asks the Court to enter Judgment in its favor and against Razaghi Healthcare, Razaghi, and Hasan, and each of them, as follows:

     i.       Award Plaintiff compensatory, punitive and treble damages in an amount exceeding $30,000,000.00;

     ii.      Award Plaintiff interest (prejudgment and post-judgment) on all sums permitted by law;

     iii.    Award Plaintiff the Declaratory Relief requested herein;

     iv.    Award Plaintiff reasonable attorney's fees and costs for having to prosecute this matter, under A.R.S. § 12-341.01 and as otherwise available; and

     v.     Award all other just and proper relief.

**DATED** this <u>29th</u> day of January, 2024.

**DICKINSON WRIGHT PLLC**

By: <u>*/s/ D. Samuel Coffman*</u>
     D. Samuel Coffman
     Bradley A. Burns
     Amanda E. Newman
     Mitchell P. Reber
     1850 North Central Avenue, Suite 1400
     Phoenix, Arizona 85004
     *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and that it will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Nicole Francini*
an Employee of Dickinson Wright PLLC