**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Navajo Health Foundation-Sage Memorial Hospital Incorporated, | No. CV-23-08072-PCT-DJH (DMF) |
| Plaintiff, | **ORDER** |
| v. | |
| Razaghi Development Company LLC, et al., | |
| Defendants. | |

Before the Court is Defendant Razaghi Development Company, LLC's "Motion to Dismiss Count Eleven of Plaintiff's Fourth Amended Complaint" (Doc. 344).[1]  For the following reasons, the Motion will be denied.

**I.  Factual Background**

Navajo Health Foundation-Sage Memorial Hospital Inc. ("Plaintiff") is an Arizona non-profit corporation that administers and operates Sage Memorial Hospital ("Sage Memorial"), a 25-bed hospital located in the territorial boundaries of the Navajo Nation. (Doc. 338 ¶ 4).  Plaintiff's breach of contract claim relates to a "CEO Services Contract" under which Defendant Razaghi Development Company, LLC ("Defendant")[2] and its

---

[1] The Motion is fully briefed.  (Docs. 352, 355).

[2] In the FAC, Plaintiff alleges that "[d]uring all time periods relevant to this Fourth Amended Complaint ("FAC), Fazaghi Development Company, LLC transacted business under the fictitious name "Razaghi Healthcare" and is referred to herein for ease of reference as "Razaghi Healthcare NV."  (Doc. 338 ¶ 5).  For purposes of this Order, the Court will refer to Razaghi Development Company, LLC and Razaghi Healthcare as "Defendant."

principal, Defendant Ahmad Razaghi ("Razaghi") provided management services to Plaintiff. (*Id.* ¶ 87).³ From March 13, 2013, through August 31, 2018, Defendant acted as the Contract CEO for Plaintiff. (*Id.* ¶ 5). During this time, Defendant "dedicated Razaghi as the individual responsible for providing the CEO services." (*Id.* ¶ 6). In what Plaintiff characterizes as an unconscionable amendment to the CEO Services Contract, on June 16, 2017, Plaintiff's Board of Directors (the "Board") approved to extend the term of the CEO Service Contract to 2025 and make its terms retroactive to July 6, 2016. (*Id.* ¶¶ 116, 119). The CEO Services Contract also "provided for a Termination Payment to be paid to [Defendant] in the event that the contract was terminated for certain specified reasons." (*Id.* ¶ 265).

Relevant to Count Eleven, Plaintiff alleges that on August 20, 2018, when Defendants' frauds and abuses came to light, the Board decided that Razaghi was not to be paid an annual incentive bonus that year. (Doc. 338 ¶ 134). Staff relayed this information to Razaghi. (*Id.*) Plaintiff alleges that upon learning this information, on August 27, 2018, Razaghi withdrew and paid to himself, through his then-control over Plaintiff's financial department, a termination fee amounting to $10,855,134.15 (the "$10.8 million" or "Termination Payment"). (*See id.* ¶¶ 135; 135(b) (alleging "the 're' on the invoice merely referenced a 'Contract Termination Fee, Section 5.D'"); 135(c) (alleging that accounting staff was ordered "to code the payment for [the $10.8 million]

---

³ The CEO Service Contract was not attached to Plaintiff's FAC, but Defendant attaches what it says is a copy of it as Exhibit 2 to its Motion. (*See* Doc. 344-2). Plaintiff contests the authenticity of this document (Doc. 352 n.1), but nonetheless states that the Court need not resolve that fact question now "because the terms at issue for purposes of the Motion only are the same in whichever document would apply. Accordingly, [Plaintiff] does not contest the Court's ability to consider those terms, although consideration of the document itself would be improper here." (*Id.* at 4). In light of Plaintiff's concession, the Court will consider the relevant terms and sections cited by the parties in their briefing, without incorporating by reference the entirety of the document at Doc. 344-2. *S.F. Patrol Special Police Officers v. City & Cnty. of San Francisco*, 13 F. App'x 670, 675 (9th Cir. 2001) (stating that a court may consider "material that the plaintiff properly submitted as part of the complaint or, even if not physically attached to the complaint, material that is not contended to be inauthentic and that is necessarily relied upon by the plaintiff's complaint").

as 'Management Services Fees'"). Plaintiff says that upon later learning of Razaghi's "misappropriation" on August 30, 2018, the Board voted on a resolution the next morning "to terminate the [CEO Services Contract] immediately and instruct[] the staff of Sage Memorial to secure its bank accounts." (*Id.* ¶ 135(i)). Plaintiff thus alleges Defendant "took from [Plaintiff] and/or caused [Plaintiff] to pay a Termination Payment" in breach of the agreement. (*Id.* ¶¶ 266–67).

## II. Procedural Background

As noted in Magistrate Judge Fine's January 19, 2024, Order granting Plaintiff leave to file its proposed Fourth Amended Complaint, this case's procedural history is extensive:

> In short, the matter was filed in the District of Nevada in February 2019, and the matter was transferred to this District in April 2023. (Docs. 1, 282, 283, 284) By the time of transfer to this District in April 2023, Plaintiff had filed its Third Amended Complaint in May 2022, and previous motions to dismiss various claims had been decided regarding Plaintiff's various complaints, including the Third Amended Complaint. (Docs. 178, 192, 232) After transfer to this District, Defendants filed an Answer/Counterclaims/Third-Party Claims and an Amended Answer/Counterclaims/Third-Party Claims. (Docs. 291, 298; *see also* Doc. 217) Several Third-Party Defendants have since been dismissed upon stipulation. (Docs. 318, 319)
>
> In June 2023, the parties filed an updated joint case management report in this Court. (Doc. 300) The joint case management report proposed various agreed upon case management deadlines. (*Id.*) The joint case management report also stated that "[a]ll parties reserve the right to seek leave to amend pursuant to Rule 15(a)(2)." (*Id.* at 6) After a case management conference, District Judge Humetewa issued a Case Management Order setting various deadlines in the matter. (Docs. 301, 303; *see also* Docs. 327, 328) The June 23, 2023, Case Management Order included an order that "[t]he deadline for joining parties, amending pleadings, and filing supplemental pleadings is 60 days from the date of this Order." (Doc. 303 at 1-2) In addition, the June 23, 2023, Case Management Order adopted the parties' proposed April 19, 2024, deadline for completion of fact discovery. (*Id.* at 2; *see* Doc. 300 at 10)

(Doc. 333 at 2). On August 22, 2023, within the 60-day window to amend pleadings,

Plaintiff sought permission "to clarify/add claims for breach of contract and the covenant of good faith and fair dealing, based on" the same facts alleged in other claims which were not dismissed by the Nevada Court. (Doc. 321 at 2–3). Judge Fine granted Plaintiff's Motion to Amend (Doc. 333), and on January 29, 2024, Plaintiff filed its Fourth Amended Complaint ("FAC") (Doc. 338).

Defendant now moves to dismiss Count Eleven of the FAC for breach of contract on the grounds that it fails to state a claim under Fed. R. Civ. P. 12(b)(6).

### III. Legal Standard

Dismissal under Rule 12(b)(6)[4] may be based on either a lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). The challenged pleading must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is not a particularly onerous burden: indeed, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). At a minimum, the complaint only must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When ruling on a motion to dismiss, the court accepts all factual allegations in the complaint as true and views the pleadings in light most favorable to the nonmoving party. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Ordinarily, a court may look only at the face of the complaint to rule on a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

---

[4] Except where otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

### III. Discussion

To succeed in a breach of contract claim under Arizona state law, a plaintiff must show that "an enforceable contract exists, that it was breached, and that the plaintiff suffered damages." *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 984 (D. Ariz. 2017); *see also Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). Defendant argues that taking Plaintiff's allegations as true, the terms of the CEO Services Contract establish that Defendant was entitled to the Termination Payment and thus Plaintiff has not and cannot establish a breach. (Doc. 344 at 5).

Section 5.D., titled "Termination Payment," states that "[i]n the event that [Plaintiff] elects to terminate the Contract any time prior to conclusion of the then-current term for cause pursuant to Sections 4.A.1, 4.A.2 or 4.A.3, [Plaintiff] shall . . . pay [Defendant] a Termination Payment. . ." (Doc. 344-2 at 11). Section 4, titled "Breach, Remedies, and Termination of Contract," provides:

> A. For "Cause."  This Contract may be terminated for cause by either Party . . .
>
> "For cause" is defined as:
> (1) the cessation of operations of [Plaintiff], for whatever reason;
> (2) the bankruptcy, insolvency, or dissolution of either party to this contract
> (3) the sale or lease of [Plaintiff] to a third party;
> (4) a material breach of this Contract that results in a criminal conviction or entry of a plea of guilty or nolo contendere to any crime only with respect to Ahmad R. Razaghi (for the avoidance of doubt, excluding any other person affiliated with [Defendant's] management; or
> (5) A non-criminal material breach of this Contract that is not cured within thirty (30) days after the breaching party receives written notice thereof from the non-breaching party.
>
> B. In the event that the [Plaintiff] terminates this Contract for cause as previously defined in Sections 4.A.1, 4.A.2 or 4.A.3, the [Plaintiff] shall pay [Defendant] (a) sum equal to the compensation described in this Contract up to the date of termination plus (b) the termination payment as set forth in Section 5.D of this Contract (the "Termination Payment"); provided however that [Defendant] shall not be entitled to the Termination Payment if [Plaintiff] terminates this Contract for cause as previously

> defined in Section 4.A.4. . .
>
> C. In the event that this Contract expires . . . or the [Plaintiff] elects to terminate this Contract at any time prior to termination of this Contract for any reason other than those listed as "cause" in Section 4.A., [Plaintiff] shall pay to [Defendant] (a) sum equal to the compensation described in this Contract up to the date of termination plus (b) the Termination Payment . . .
>
> D. In the event that [Defendant] terminates this Contract without "cause" as previously defined in Section 4.A., [Defendant] shall not be entitled to the Termination Payment.

(Doc. 344-2 at 9).

Defendant argues that Plaintiff's allegations make "clear that Plaintiff terminated the Contract without cause" and thus Defendant was entitled to receive the Termination Payment. (Doc. 344 at 4). Defendant says the FAC plainly alleges that Plaintiff's Board of Directors terminated the CEO Services Contract on August 31, 2018, and that upon termination, the CEO Services Contract stated that Defendant "would receive a Termination Payment unless (a) the termination was for cause as set forth in §4(A) of the Contract or (b) [Defendant] terminated the Contract without cause." (Doc. 344 at 4). Defendant argues that the FAC fails to allege, and cannot allege, that any "for cause" circumstance noted in Section 4.A existed upon Plaintiff's termination of the CEO Services Contract on August 31, 2018. (*Id.*) Under this interpretation of the facts, Defendant says it was entitled to the Termination Payment and thus Plaintiff cannot allege a breach of the CEO Services Contract. (*Id.*)

In response, Plaintiff says Defendant's Motion ignores and mischaracterizes its allegations. Plaintiff says it has offered two alternate theories of liability for its breach of contract claim.

First, Plaintiff says *Defendant* terminated the CEO Service Contract when Razaghi took the Termination Payment on August 27, 2018, and that the Board's termination vote four days later was merely to end Defendant's access to its accounts and confirm Defendant's prior termination. (Doc. 352 at 3). Plaintiff says the allegations of the FAC

clearly show that "Defendants <u>maintained control over Sage and access to its accounts</u> until Sage took affirmative action to oust them from that control and access" and that its "allegations that it terminated that control and access are not inconsistent with its position that [Defendant] terminated the Contract first." (Doc. 352 at 6). Further, Plaintiff says, because Defendant terminated the CEO Service Contract first, without cause, it was not entitled to the Termination Payment, and breached the CEO Service Contract by withdrawing the $10.8 million. (*See* Doc. 344-2 at 9, Section 4.D.) ("In the event that [Defendant] terminates this Contract without "cause" as previously defined in Section 4.A., [Defendant] shall not be entitled to the Termination Payment").

Alternatively, Plaintiff says that even if it was the first to terminate the Contract, "it did so for a reason that did <u>not</u> give rise to a right to Termination Payment" under the CEO Services Contract. (*Id.*) Plaintiff says Section 4.A.5 allowed it to terminate the CEO Services Contract for cause when Defendant committed a non-criminal material breach, here, by misappropriating millions of its funds, and that this is not a circumstance in which a Termination Payment would be due. (Doc. 352 at 7). It further argues that it has alleged facts that made the 30-day notice and cure period in Section 4.A.5 inapplicable to these circumstances because the breach in question was a "vital" breach and frustrated the purpose of the contract. (*Id.* at n.4 *citing L.K. Comstock & Co., Inc. v. United Engineers & Constructors Inc.*, 880 F.2d 219, 231–31 (9th Cir. 1989) (applying Arizona law to hold that a party need comply with a contract's 48-hour notice requirement before canceling because defaulting party had committed a "vital" breach that frustrated the purpose of the contract).

Both of Plaintiff's theories are sufficiently supported in the factual statements alleged in the 160-page FAC to overcome the low burden that Rule 8 imposes on plaintiffs. In its Reply, Defendant asserts that the FAC does not explicitly allege that Defendant terminated the CEO Service Contract. (Doc. 355 at 2). Defendant says that Plaintiff's theory that Defendant breached first is "inconsistent with Plaintiff's allegations in the FAC" that expressly allege that *Plaintiff* terminated the CEO Service Contract.

(*Id.*)  The Court disagrees.  The FAC clearly alleges that "the CEO Services Contract was terminated for reasons that did not give rise to a Termination Payment being owed to [Defendant]" and "[n]otwithstanding that fact, [Defendant] took from [Plaintiff] and/or caused [Plaintiff] to pay a Termination Payment.  This breached the contract."  (Doc. 338 ¶¶ 266–67).  Though Plaintiff is agreeable to amendments that would add more factual detail supporting its theories of liability, the Court finds further amendment unnecessary.  Defendant is on sufficient notice of the alleged breach and the legal theories currently supporting the breach.  Defendant is of course free to explore the facts and conduct surrounding the alleged breach in discovery.  But the Court finds it inappropriate to find that the breach of contract claim is legally implausible under Rule 12(b)(6) simply because Plaintiff does not have an allegation that explicitly says that Defendant terminated the CEO Service Contract.  Viewed in the light most favorable to Plaintiff, the FAC alleges facts that state cognizable legal theories that Defendant was not entitled to take the Termination Payment and thus breached the CEO Services Contract.

Accordingly,

**IT IS ORDERED** that Defendant Razaghi Development Company, LLC's "Motion to Dismiss Count Eleven of Plaintiff's Fourth Amended Complaint" (Doc. 344) is **denied.**

Dated this 19th day of August, 2024.

Honorable Diane J. Humetewa
United States District Judge