**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Navajo Health Foundation-Sage Memorial Hospital Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Razaghi Development Company LLC, et al.,<br><br>Defendants. | No. CV-23-08072-PCT-DJH<br><br>**ORDER** |

Before the Court is a Motion for Reconsideration filed by Defendants Razaghi Development Co, LLC ("RDC"), Ahmad R. Razaghi ("Razaghi") and Tausif Hasan ("Hasan") (collectively, "Defendants") (Doc. 468). Defendants ask the Court to reconsider its finding that RDC breached the Second Amended CEO Services Contract ("SAC") when it took an unauthorized $10.8 million Termination Payment from Sage on August 27, 2018. (Doc. 464). Plaintiff Navajo Health Foundation—Sage Memorial Hospital, Inc. ("Sage") has filed a Response (470) and Defendants have filed a Reply (Doc. 471).

**I.     Legal Standards**

District courts have discretion to reconsider prior orders. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003); *Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir. 1994). However, reconsideration is an "extraordinary remedy" that is available only in "highly unusual circumstances." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890

(9th Cir. 2000) (internal quotation marks omitted); *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (circumstances justifying reconsideration are rare). Motions for reconsideration are ordinarily denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). They are generally "disfavored . . . and are not the place for parties to make new arguments not raised in their original briefs." *Motorola, Inc. v. J.B. Rodgers Mechanical Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003); LRCiv 7.2(g)(1).

**II.   Discussion**

On September 19, 2025, the Court granted partial summary judgment in favor of Sage on its breach of contract claim relating to RDC's unauthorized taking of a $10.8 million Termination Payment. (Doc. 464). In their Motion for Reconsideration, Defendants argue that the Court's ruling was in error because it rested "entirely on its *factual determination* that RDC committed an 'unauthorized taking' of the Termination Payment." (Doc. 468 at 2). Defendants say that there was no unauthorized taking because the invoice seeking the Termination Payment was processed and paid by Sage. (*Id.*) Defendants say "no less than four agents and employees of Sage reviewed, approved, processed and/or issued the Termination Payment." (Doc. 468 at 3). Defendants argue that these agents owed fiduciary duties to Sage and acted at its behest in processing the Termination Payment. (*Id.* at 4). They say that because a reasonable juror could have reached the conclusion that RDC's actions in sending an invoice and receiving payment for that invoice did not constitute a breach of contract, the Court's contrary finding was manifest error. (*Id.*)[1]

---

[1] Defendants also argue that the Court erred in "its reliance on *Altimayer-Pizzorno v. L-Soft Int'l, Inc.*, 302 Fed Appx. 148, 153 (4th Cir. 2008) . . . to support its conclusion that the Court may determine as a matter of law whether RDC's conduct terminated the SAC." (Doc. 468 at 10). The Court summarily rejects this argument because, as Sage points out, it plainly mischaracterizes the Court's Order. Sage, not the Court, relied on *Altimayer-Pizzorno* in its Partial Motion for Summary Judgment ("PMSJ"). The Court even noted that "Sage's citation to an unpublished Fourth Circuit opinion applying Maryland law [was] peculiar." (Doc. 464 n.17). The Court instead relied on *Miller v. Crouse*, 506 P.2d 659, 644 (Ariz. Ct. App. 1973) to support its conclusion that RDC terminated the SAC when it issued and took the $10.8 million Termination Payment. (*Id.*

### A. Defendants' Arguments are New

Defendants do not cite any new evidence or legal authorities in their Motion for Reconsideration. Instead, they offer new arguments for why RDC's receipt of the $10.8 million Termination Payment on August 27, 2018, was not a breach of the SAC. When Sage sought summary judgment on this breach of contract claim, Defendants never asserted that RDC's taking of the Termination Payment was authorized because it was processed by Sage employees. Instead, Defendants argued RDC did not breach the SAC because RDC was entitled to the Termination Payment on August 27, 2018—either because Sage terminated the SAC without cause, or because RDC terminated the SAC for cause. (*See* Doc. 430 at 10–14 (arguing that it was entitled to the Termination Payment under the SAC because Sage terminated the SAC without cause) and *id.* at 14–18 (arguing that even if RDC terminated the SAC, it did so for cause and it was therefore entitled to the Termination Payment)). The Court found that the undisputed facts showed that neither circumstance existed on August 27, 2018, and RDC was not entitled to the $10.8 million Termination Payment it invoiced and caused Sage employees to process.

Defendants do not explain why they did not make their check processing argument earlier. Instead, in a footnote, Defendants say their Response "repeatedly made clear that RDC requested and 'received' the Termination Payment which was approved and issued by Sage." (Doc. 468 n. 4). But Defendants' use of the verb "receive" did not alert the Court to factual disputes over Sage's proper (or improper) processing of the Termination Payment.[2] The deposition testimony cited in Defendants' Motion shows that they

---

at 24–25 (noting that "[i]n Arizona, a notice to rescind 'is not required to be formal and may be evidenced by conduct, but manifestation of an intent to rescind must be unequivocal.'").

[2] To the contrary, RDC leaned into the characterization of its receipt of the payment as a breach in defending its entitlement to the Termination Payment in its Response. (*See* Doc. 430 at 10 (arguing that Sage terminated the SAC without cause when it discovered RDC took the Termination Payment because "for Sage to validly terminate the SAC for cause based on a material breach, it was required to first provide notice and an opportunity to cure to RDC" and Sage did not do so); *id.* at 12 (arguing "RDC's receipt of the Termination Payment was not a 'vital' breach relieving Sage of its contractual obligation to provide RDC written notice of and an opportunity to cure a material breach of the SAC."). *id.* n.4 citing Doc. 422-8 at 90, Ex. 43, Defs' Third Supp.

- 3 -

undeniably possessed this information at the time of the summary judgment briefing. Defendants offer no excuse for why it was not presented to the Court in their Response to Plaintiff's PMSJ.

> Litigation is not a game of hopscotch. It is generally accepted that a party may not, on a motion for reconsideration, advance a new argument that could (and should) have been presented prior to the district court's original ruling. . . Litigants normally must frame the issues in a case before the trial court rules. After that point, a litigant should not be allowed to switch from theory to theory like a bee in search of honey.

*Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003) (affirming district court's refusal to reconsider its decision based on movant's newly raised argument).

The Court was thus entitled to rely on the undisputed evidence for its summary judgment analysis, *see* FRCP 56(e)(2), and Defendants cannot obtain reconsideration of the summary judgment order by belatedly pointing to evidence that was always available to them to create factual disputes. *Motorola*, 215 F.R.D. at 582 ("Motions for reconsideration are . . . not the place for parties to make new arguments not raised in their original briefs."). *See also, e.g., Preston v. City of Pleasant Hill*, 642 F.3d 646, 652 (8th Cir. 2011) (affirming denial of motion to reconsider in part because movant "belatedly [brought] the DHS applications to the district court's attention, even though the DHS applications were available to [movant] at the time he resisted defendants' summary judgment motion"); *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) (denying Rule 59(e) motion where movant "submitted a second affidavit of [declarant] that contained statements not found in [declarant's] initial affidavit filed in opposition to [defendant's] summary judgment motion," because "[t]he rule does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented

---

Resps. to Pl's First Set of Rogs ("receipt of the Termination Payment on August 27, 2018, rather than on September 1, 2018, 30 days after RDC's August 2, 2018, notice of Plaintiff's breaches of the Contract, may have constituted a non-criminal material breach of the Contract. However, Plaintiff terminated the SAC without providing RDC with written notice of this breach and without giving RDC 30 days to cure any such breach."); Doc. 430 at 17 ("RDC's receipt of the Termination Payment on August 27, 2018, was at best premature and at worst a material breach of the SAC.").

- 4 -

1   to the district court prior to the judgment").

###     B.      Defendants' New Arguments Lack Merit

Defendants' arguments, even if considered, also lack merit. Defendants say that the Court's "determination that RDC 'took' the payment, instead of Sage voluntarily issuing payment of a legitimate invoice, required factual findings in favor of the nonmovant that the Court was not entitled to make." (Doc. 468 at 6). Defendants say after RDC issued Invoice 1369 for $10,855,134.15 "it passed through the hands of <u>at least four</u> of Sage's employees and agents: Nicole Hardy (Sage accounting employee), Thomas Matenaer (Sage Comptroller), Tausif Hasan (Sage CFO), and Tad Greenfield (Sage Co–CEO)." (*Id*.) Defendants say "the full knowledge, involvement, and approval of the Termination Payment by multiple agents and employees of Sage creates a fact issue which the jury must resolve regarding whether Sage approved the Termination Payment versus whether RDC engaged in an 'unauthorized taking' of that payment." (*Id*.) Defendants argue for the first time that Sage can only act through and be held responsible for the actions of its agents and employees and at all relevant times, Hardy, Matenaer, Hasan, and Greenfield were Sage's acting agents. (*Id*. at 6–9). Defendants say Matenaer and Hardy's "actions in processing and ultimately paying that invoice are, as a legal matter, the actions of Sage itself," and that factual disputes surround Hasan and Greenfield's knowledge and actions related to the Termination Payment. (*Id*. at 8).

The Court disagrees. The SAC provides that RDC, with Razaghi as both CEO of RDC and Sage, had the "the right and commensurate authority and responsibility, express or implied, to oversee the supervision and effective management of the day-to-day business operations of [Sage]," and that RDC "shall oversee. . . the collection of accounts and monies owed to [Sage]." (Doc. 422-5, Ex. 18). Razaghi, the undisputed CEO of RDC and Sage at the time of the Termination Payment, testified that he directed the $10.8 million Termination Payment to be paid to RDC. When he was asked, "Who made the decision to take the $10.8 million?" Mr. Razaghi testified, "**I** did." (Doc. 422-3 at 131, Ex. 13, Razaghi Depo. 140:21–22 (emphases added)). When asked, "And who did

you discuss taking the $10.8 million with in your organization?" he answered, "Mr. Greenfield and Mr. Hasan." (*Id*. at 140:23–24). When he was asked whether he was "the one that directed that this $10.8 million be taken out of the Sage account," he unequivocally responded, "I directed it be invoiced **and paid**." (*Id*. at 132 (emphasis added)). He also testified he did not believe he needed to use the Escrow Account to process the payment or to seek approval for the Termination Payment from the Sage Board. (*Id*. at 144:23–145:3). Razaghi further stated that all the authorized signors of Sage's checking account were under his authority, including Hardy, Matenaer, Hasan, and Greenfield. (*Id*. at 144:13–21).

Considering this testimony, the fact that Hasan testified that Greenfield approved the Termination Payment invoice does not, as Defendants contend in their Reply, create "a genuine issue of material fact as to the extent to which Razaghi participated in the payment itself." (Doc. 471 at 5). Razaghi, by his own admission, directed the processing and payment of the unauthorized Termination Payment invoiced on August 27, 2018. Razaghi was the CEO of both Sage and RDC. He admitted that Hardy, Matenaer, Hasan, and Greenfield were under his control and authority. The fact that any of these individuals may have breached a fiduciary duty to Sage when, at Razaghi's direction, they "approved" or "processed" the invoice does not raise factual issues as to whether Razaghi, as CEO of Sage and RDC, properly directed the $10.8 million Termination Payment to RDC.[3] As the Court's Order found, no circumstances existed under the SAC

---

[3] In their Reply, Defendants argue the Court erred in finding that RDC improperly took the Termination Payment because "the Court rejected Sage's summary judgment argument that Defendants had violated their fiduciary duties — including with respect to the Termination Payment." (Doc. 471 at 5). Again, this is a mischaracterization of the Court's Order. The Court denied Sage's request to enter summary judgment against Defendants on Sage's breach of fiduciary duty claims because Sage had only summarily made the arguments and failed to "cite to the specific evidence supporting its [breach of fiduciary duty] claims." (Doc. 464 at 39–40 (stating, "it is *Sage's* burden, not the Court's, to identify the undisputed evidence supporting its claims"). If properly made, these claims against Defendants certainly present an uphill battle for them at trial, but on summary judgment, Sage had not sufficiently met that burden because that specific evidence was not identified in the briefing. There is no conflict in the Court's finding that Sage had met its burden of establishing a breach of contract but not on its breach of fiduciary duty claims.
 Notably, in their Response to the PMSJ, Defendants exclusively defended by saying that Defendants did not owe fiduciary duties to Sage and ignored Sage's breach

that would have entitled RDC to a Termination Payment on August 27, 2018. Given multiple uncontested facts in the record, including Razaghi's own actions, the Court "afforded no weight" to Razaghi's belief that RDC was contractually entitled to the Termination Payment because Sage had terminated the SAC on or before August 27. (Doc. 464 at 21). Razaghi's unsupported averment likewise does not provide evidence of a factual issue as to whether he properly directed the payment of the Termination Payment to RDC. RDC's receipt of the $10.8 million Termination Payment, processed and paid at Razaghi's direction, breached the SAC because RDC was not entitled to that payment.

For the foregoing reasons,

**IT IS ORDERED denying** Defendants' Motion for Reconsideration (Doc. 468).

Dated this 3rd day of November, 2025.

Honorable Diane J. Humetewa
United States District Judge

---

arguments. (Doc. 430 at 26–28 (arguing that no duty was owed to Sage because neither Hasan nor Razaghi served as a member of Sage's board of directors; because RDC served only as an independent contractor to Sage; and because Sage did not entrust Hasan with any particular knowledge when RDC made him CFO of Sage). The Court rejected Defendants' arguments and found that RDC, Razaghi, and Hasan owed fiduciary duties to Sage. (Doc. 464 at 39). To the extent Defendants now aim to present facts relevant to those alleged breaches in seeking reconsideration, they again are precluded from doing so under LRCiv 7.2(g)(1).